[No. 10162–5–I.   Division One.   July 12, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. CYNTHIA
ELLEN MARLER, *Appellant*.

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *William Downing, Deputy,* for respondent.

RINGOLD, J.—Cynthia Marler appeals the judgment and sentence entered on her conviction by a jury of first degree murder. She also appeals the denial of her postjudgment motion for a new trial. The issues concern: (1) the terms of an agreement between Marler and the State; (2) the admission of identification testimony; (3) the use of hearsay evidence; (4) the denial of a motion for change of venue or jury sequestration; and (5) juror misconduct. We find no error and therefore affirm the trial court.

On August 11, 1980, Wanda Touchstone was shot and killed in a parking lot off University Avenue in Seattle. There were no eyewitnesses to the shooting, but several people saw a woman subsequently identified as Marler leaving the parking lot shortly after the shots were fired. Marler was arrested at the Seattle–Tacoma airport later that day.

Marler was initially represented by appointed counsel. Subsequently Marler's husband retained Bill Lanning as her counsel, and Lanning entered into discussions with the police and deputy prosecuting attorneys concerning a possible reduction of the charge in return for the Marlers' cooperation in the investigation of other suspects. Cynthia Marler initially expressed an unwillingness to cooperate, but eventually authorized Lanning to negotiate further with the police and prosecutors.

The next day a meeting attended by Lanning and representatives of the State culminated in an oral agreement that was subsequently approved by Cynthia Marler. She promised to assist in the investigation of other suspects in the murder in return for certain promises by the State. The issue on appeal is whether the State led Marler to believe the charge against her would be reduced or dismissed in

return for her cooperation.

Pursuant to the agreement, Marler and her husband gave statements to the police admitting her guilt and implicating Lewis Touchstone (the victim's estranged husband) and Joe Solomon (Touchstone's son–in–law) in the murder. The gist of their statements is that Joe Solomon approached the defendant with a request to kill Wanda Touchstone and she agreed to do so in return for a certain sum of money. According to the Marlers, Solomon paid the airplane fare to and from Seattle, arranged for a rental car and provided the gun, ammunition, an outline of the victim's apartment, keys to the apartment, and a picture of the victim. The statements also allege that Solomon described one of the victim's rings and instructed Cynthia Marler to return with it. Marler's husband stated that Joe Solomon told him that Solomon's father–in–law had put up the money for the murder.

Subsequent to her statement, Cynthia Marler participated in two monitored telephone calls in an unsuccessful attempt to induce one of the suspects to make incriminating statements. She then reluctantly agreed to a polygraph examination, but her responses to two questions were evaluated as apparently deceptive.

After obtaining the results of the polygraph examination, the prosecutor decided not to file charges against the other suspects. Marler then filed a motion to dismiss, alleging the State had violated an agreement to give her immunity from prosecution. The motion was heard by the trial court in a hearing closed to the public. *See Seattle Times Co. v. Ishikawa,* 97 Wn.2d 30, 640 P.2d 716 (1982). By subsequent order of the trial court the matter is now of public record.

## The Agreement

At the hearing, Marler and her husband submitted affidavits alleging that (a) she was promised immunity in return for her cooperation, (b) the State had failed to abide by its agreement, and (c) she will be killed if incarcerated. The Marlers did not testify at the hearing. The court heard

testimony from several police officers, Chief Criminal Deputy Prosecuting Attorney David Boerner and Marler's former attorney, Bill Lanning. All witnesses concurred as to the essential terms of the agreement between Marler and the State, differing only as to whether there was sufficient evidence to prosecute Solomon and Touchstone. They testified that the agreement was to give Marler and her husband "use immunity" for their statements about the incident and if, after evaluating the information, the prosecutor decided there was a chargeable case against other suspects, there would be further discussions directed toward a specific agreement as to the charge and sentence recommendation. Boerner acknowledged it was implicit that, if he developed a case against others, he would offer Marler something more. There was no agreement as to what benefit Marler would receive, and there was never an offer to reduce or dismiss the charge. Boerner testified that his office decided not to file additional charges because even if Marler's evidence established probable cause to believe others were involved, more was required in his judgment to establish a chargeable case.

Lanning testified that he never assured Marler she would be a free person if she cooperated. Instead, he fully explained to her the limited scope of "use immunity" and the conditional nature of the offer. He advised her that if she cooperated and the State was satisfied with her cooperation and if sufficient evidence developed to establish a case against other suspects, the State would consider freeing her or reducing charges. He also advised her that she might receive no benefit other than a substantial delay of the trial, but a delay that would help in the defense of her case. Lanning testified that he strongly disagreed with the State's judgment regarding the value of Marler's information, but he also testified that the State did not violate the agreement.

The trial court found that Marler fully cooperated in the investigation, but also found that there was no agreement to dismiss the charge in return for her cooperation. The

trial court concluded the State had kept its promise by giving her "use immunity" for the statements and by investigating the information provided by Marler and her husband.

On appeal, Marler contends she was entitled to a reduction of the charge in return for her cooperation. She asks us either to remand for entry of judgment on the lesser offense of second degree murder or to grant her a new trial. The defendant argues that due process requires the prosecutor to reduce the charge because she relied to her detriment on the State's promise by fulfilling her promise to give a confession implicating herself and others in the murder. *State v. Wheeler*, 95 Wn.2d 799, 631 P.2d 376 (1981). She also contends that the State cannot use her apparently deceptive responses during the polygraph examination to avoid its agreement because the questions were ambiguous and she was nervous and did not trust the test. Marler concludes that while the court cannot order the State to file charges against other suspects, the court must compel the State to negotiate further for a reduction of the charge. *United States v. Bowler*, 585 F.2d 851 (7th Cir. 1978).

An offer of immunity or a plea proposal may not be withdrawn by the State if the defendant has detrimentally relied on the State's offer. *State v. Wheeler, supra.* There is no question that Marler has detrimentally relied on the State's offer, and the issue here is the scope of that offer and whether the resulting agreement was honored by the State. The trial court must resolve the factual question of how far the State's offer extended and must evaluate the facts to determine the parties' reasonable expectations. *United States v. Mooney*, 654 F.2d 482 (7th Cir. 1981); *United States v. Arnett*, 628 F.2d 1162 (9th Cir. 1979). The ultimate question here is whether this is merely a case of disappointed but unfounded expectations by the defendant or one where the State gave the defendant a reasonable expectation of a reduced charge. *See United States v. Cru-*

*sco,* 536 F.2d 21 (3d Cir. 1976).[1]

The testimony concerning the scope of the State's offer is essentially undisputed. In addition to "use immunity," the State offered to evaluate Marler's information, investigate the case against other suspects and negotiate further for a possible dismissal or reduction of the charge in return for Marler's testimony if the State concluded that a chargeable case against other suspects existed. Marler accepted and relied on this offer by giving her confession and cooperating in the investigation. Even though the resulting agreement was illusory in the sense that the State had total control over whether to reduce charges, the criminal law will not permit the State to claim it promised nothing. Instead, the law imposes an implied promise by the State to act in good faith. *United States v. Bowler, supra.* We must therefore determine whether the State in good faith kept its promise to investigate and consider reducing charges.

The State investigated Marler's information and concluded that a chargeable case did not exist. While Marler challenges the reasonableness of the State's decision, including the apparent reliance on the polygraph examination, she has not established that the State entered the agreement, conducted the investigation or exercised its judgment in bad faith. The record reveals that Marler did not pass the polygraph examination and was unable to elicit incriminating statements during her monitored telephone calls. It also reveals that the investigation of her statement uncovered no new evidence. Thus, prosecution of other suspects would have been based largely on the testimony of a confessed murderer. While reasonable people could differ on the value of Marler's information, there is no showing that the State obtained her statement without an honest intention of pursuing charges against other sus-

---

[1]The issue is complicated by the fact that at the hearing Marler alleged she was promised immunity, but on appeal she contends she was promised a reduction of charges. The trial court did not decide whether there was a promise to reduce charges. The evidence is sufficiently comprehensive, however, to enable us to make a meaningful review of the alleged constitutional error.

pects.[2]

The State in good faith performed its promise to investigate Marler's information and make a decision based upon the quality of the resulting evidence. The State offered nothing more, and Marler had no objectively reasonable basis for believing that more was offered. *See United States v. Bowler, supra; United States v. Crusco, supra.* Marler did not testify during trial, and the State kept its promise of "use immunity" by not using her husband's statement or her confession and by not offering any evidence obtained as a product of those statements. The trial court properly held that the State fulfilled its agreement with Marler.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will be filed for public record but will not be published.

JAMES and CORBETT, JJ., concur.

Reconsideration denied September 9, 1982.

Review denied by Supreme Court December 3, 1982.

---

[2]We do not read Marler's brief as raising an issue of ineffective assistance of counsel, although she asks us to carefully review the agreement because of alleged ineffective assistance. Without evidentiary support, she asserts that the State acted in bad faith by taking advantage of ineffective counsel to obtain a full confession without ever seriously intending to pursue charges against other suspects. This allegation requires an analysis of hitherto undeveloped facts concerning all the surrounding circumstances. Being based on alleged facts that are entirely outside the record, this question cannot be resolved on this appeal. *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302 (1978). We note, however, that "illusory agreements" similar to the one at issue here are not unprecedented. *United States v. Bowler,* 585 F.2d 851 (7th Cir. 1978).