[Nos. 42843-8-I; 42844-6-I; Division One. July 6, 1999.]
43097-1-I; 43356-3-I;
43357-1-I.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID JOSEPH McRAE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. RAVEN L. BREALAN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY WAYNE WHITE, *Appellant*.

*David Koch* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellant McRae.

*Shauna Claire O'Connor* and *Eric Broman* of *Nielsen, Broman & Associates, P.L.L.C.,* for appellants Brealan and White.

*Norm Maleng, Prosecuting Attorney,* and *Andrew J. Ries* and *Brian Martin McDonald, Deputies,* for respondent.

300

COLEMAN, J. — These three cases involve the inclusion of juvenile felony pleas in an adult offender score. Prior to 1997, juvenile convictions for crimes committed before the defendant was 15 years old were not used to determine the offender score.[1] In addition, juvenile convictions for class B and C felonies committed between the ages of 15 and 17 were not part of the defendant's adult criminal history after he or she reached age 23.[2] In 1997, the Legislature amended the sentencing laws to provide for the inclusion of all juvenile felony convictions in an offender score. However, the defendants in the instant cases sought to exclude certain adjudications based on the terms of their juvenile plea bargains, arguing that the State had promised the convictions would not be part of their adult criminal histories, as provided under the former laws.

Because these cases involve a common issue, the cases were linked for argument and we have consolidated them for the purposes of this opinion. We find that the defendants' juvenile plea statements accurately represented the law at the time the agreements were entered but do not establish a promise or guarantee by the State that the law would not change. Therefore, we find that the inclusion of

---

[1]See STATE OF WASHINGTON SENTENCING GUIDELINES COMMISSION, IMPLEMENTATION MANUAL § 9.94A.360, at II-73, -76 (1995).

[2]See id. at II-73.

the convictions in the defendants' offender scores did not breach their prior agreements with the State.

## FACTS

David McRae

On April 20, 1998, David McRae pleaded guilty to first degree unlawful possession of a firearm and second degree robbery. He was 20 years old when he committed these crimes. His criminal history includes eight juvenile felony adjudications, including pleas in four 1991 causes that involved crimes he committed when he was less than 15 years old.[3] When the State used his juvenile convictions to calculate his adult offender score, McRae contested the inclusion of the 1991 causes. McRae had stricken language in his juvenile plea forms that indicated the plea would become part of his adult criminal history if he committed a crime before he was 23 and he was 15 or older when he committed the juvenile offense. Because he was under 15 when he committed the offenses, McRae argued that at the time he believed the provisions were inapplicable and that the State had agreed the convictions would not be used when he became an adult. He argued that the use of the four convictions to calculate his offender score in the current case thus violated his prior agreements with the State. The sentencing court disagreed, finding that McRae was essentially making an ex post facto argument that had previously been rejected by the courts. The court set his offender score at eight for the robbery and six for the unlawful possession of a firearm and sentenced him to concurrent terms of 57 months for each offense.

Raven Brealan

On May 21, 1998, Raven Brealan pleaded guilty to third

---

[3]The pleas at issue include two convictions for taking a motor vehicle without permission and convictions for attempted second degree burglary and attempted second degree assault. McRae's juvenile history includes three additional convictions for taking a motor vehicle without permission and one conviction for attempted first degree robbery, offenses he committed between the ages of 15 and 17.

degree assault. Brealan was 21 years old when he committed this crime. His criminal history includes six juvenile felony adjudications, including four 1991 pleas that involved offenses he committed when he was less than 15 years old.[4] In his current pleas, Brealan did not contest the State's inclusion of his juvenile record in his offender score, but he later argued that the use of his 1991 pleas breached the terms of those agreements. Brealan relied on language in his plea forms that indicated the pleas could be used in his adult criminal history if he was 15 or older when he committed the juvenile offenses. The sentencing court rejected the argument, finding that the State had not promised the pleas would never be used when Brealan became an adult. The court set Brealan's offender score at six and sentenced him to a term of 22 months.

Timothy White

On July 28, 1998, Timothy White pleaded guilty to two counts of delivery of cocaine in violation of the Uniformed Controlled Substances Act. White was over 23 years old when he committed the current offenses, and he has ten prior juvenile adjudications for class B and C felonies that he committed between the ages of 12 and 17.[5] In his current pleas, White challenged the State's calculation of his offender score. He argued that the use of his juvenile pleas breached the terms of those agreements, contending that the State promised his juvenile adjudications would not be part of his adult criminal history after he reached age 23. He relied on language in his 1988 and 1991 plea forms that indicated the pleas would become part of his adult history if he committed an offense before he was 23 and if he was

---

[4]Brealan's juvenile history includes taking a motor vehicle without permission, second degree burglary, second degree robbery, and second degree assault, all offenses that he committed before he was 15 years old. Brealan also has juvenile convictions for second degree burglary and attempting to elude, which he committed between the ages of 15 and 17.

[5]White's juvenile history includes: first degree theft, second degree burglary, taking a motor vehicle without permission, and second degree robbery, all committed at age 12; first degree escape, committed at age 13; and four violations of the Uniformed Controlled Substances Act and third degree assault, committed between the ages of 15 and 17.

over 15 when he committed the juvenile offenses. Although his earlier pleas did not contain this language, White argued that the State had made similar promises at the time he entered into those agreements.

The trial court found that the statements cited by White in the 1988 and 1991 plea forms constituted a promise not to use the pleas after White turned 23. However, because White's earlier pleas did not contain similar language, the court concluded that the State was not bound by any agreement not to use those convictions.[6] The court set White's offender score at four and sentenced him to concurrent terms of 54 months for each offense.

## ISSUE

The issue presented in these cases is whether the defendants' juvenile adjudications must be excluded from their adult offender scores based on the bargains they reached in their juvenile pleas. We review the calculation of an offender score de novo. *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994).

A plea agreement is in the nature of a contract and once accepted by the trial court, it becomes a binding agreement between the defendant and the State. *State v. Hunsicker*, 129 Wn.2d 554, 559, 919 P.2d 79 (1996). When the fundamental principles of due process so dictate, the terms of a plea agreement may be enforceable notwithstanding the explicit, contrary terms of a statute. *See State v. Shineman*, 94 Wn. App. 57, 971 P.2d 94, 97 (1999) (enforcing an agreement by the State to recommend expungement of the charge from the defendant's record) (citing *State v. Miller*, 110 Wn.2d 528, 532, 756 P.2d 122 (1988)).

In the instant cases, the defendants argue that state-

---

[6]On appeal, both parties assert that the sentencing court excluded all of White's juvenile convictions from his offender score. However, the sentencing orders and the court's written findings indicate that the court included White's juvenile convictions for first degree theft, second degree burglary, taking a motor vehicle without permission, second degree robbery, and first degree escape.

ments in their juvenile plea forms constitute specific promises by the prosecutor regarding when the convictions would be part of their adult criminal histories. Juvenile plea forms after 1987 contained the following language:

> I have been informed and fully understand that my plea of guilty and the court's acceptance of my plea will become part of my criminal history. I have also been informed and fully understand that if the offense is a felony and I was 15 years of age or older when the offense was committed, then the plea will remain part of my criminal history when I am an adult if I commit another offense prior to my twenty-third birthday.
>
> I have been informed and fully understand that if I plead guilty and the court accepts my plea, my criminal history may cause the court to give me a longer sentence for any offenses that I commit in the future.

The defendants contend that these statements reflect the State's assurances that the pleas would not be used if the defendants were under 15 when they committed the juvenile offenses or after they turned 23.

White also contends that the earlier plea forms contained a similar agreement. Prior to 1987, the forms stated:

> I have been told that the Court will consider my criminal history.
>
> . . . .
>
> I have been told that the Court does not have to follow either the Prosecuting Attorney's or the Probation Counselor's recommendation for my sentence, and could commit me to the Department of Institutions until my 21st birthday. I have also been told that if I plead guilty to this/these offense(s) that it/they will become part of my criminal history.

White argues that the term "criminal history" refers only to the defendant's juvenile record and that the references imply that the defendant's adult criminal history will not be affected by the juvenile plea.

The juvenile plea forms contain both statements of the agreement reached between the prosecution and the defend-

ant and information that must be given to the defendant by the court as a matter of law. The particular statements at issue in these cases accurately set forth the law as it then existed regarding the consequences of a juvenile plea. The statements do not, however, establish a promise by the State to disregard future changes in the law or an assurance that the law would not change. Unlike the situation in *Shineman*, the language cited by the defendants does not constitute bargained-for assurances offered by the State in return for the juvenile's plea, nor could the State properly make such promises.

Absent a specific promise in the agreements to exclude the convictions, the defendants cannot establish that the use of the juvenile convictions breaches their prior agreements. The State fulfills its obligations under a plea agreement if it acts in good faith and does not contravene any of the defendant's reasonable expectations that arise from the agreement. *State v. Marler*, 32 Wn. App. 503, 648 P.2d 903 (1982). However, the defendants are not entitled to rely solely on an expectation that the sentencing laws would not change.[7] *See State v. Hennings*, 129 Wn.2d 512, 528, 919 P.2d 580 (1996) (a vested right entitled to due process protection "must be something more than a *mere expectation* based upon an anticipated continuance of the existing law") (quoting *Caritas Servs., Inc. v. Department of Soc. & Health Servs.*, 123 Wn.2d 391, 414, 869 P.2d 28 (1994)). If the defendants were misinformed regarding the consequences of their pleas, they may be entitled to set aside

---

[7] In a supplemental authority, the defendants cite to *State v. T.K.*, 94 Wn. App. 286, 971 P.2d 121 (1999). *T.K.* concerned a statute that entitled a juvenile offender to seek expungement of his record two years after his discharge from state agency supervision. Under former RCW 13.50.050(11), a juvenile court was required to grant the motion to vacate and seal the juvenile court records if the juvenile had not committed any other offenses. *T.K.*, 94 Wn. App. at 288. This court concluded that T.K.'s right to seek expungement under the former law had matured before the law changed, when he had "satisfied every condition of expungement[.]" *Id.* at 291. The defendants in the instant cases do not argue that they had vested rights to clear their juvenile records under former RCW 9.94A.030 and 9.94A.360. Moreover, neither statute provided that juvenile adjudications would be removed from a defendant's criminal history or extended the right to permanently exclude or vacate juvenile adjudications after the defendant reached a certain age.

those pleas through a collateral attack. *See In re Montoya,* 109 Wn.2d 270, 277, 744 P.2d 340 (1987). However, the plea agreements themselves do not entitle the defendants to any exemption from the sentencing laws. Therefore, the State's use of the pleas does not constitute a breach of the prior agreements, and the application of the current sentencing provisions does not violate due process.

For these reasons, we find that in the *McRae* and *Brealan* cases, the sentencing court correctly included the defendants' juvenile adjudications, and we affirm. We remand the *White* case for resentencing in accordance with this opinion.

GROSSE and BECKER, JJ., concur.

Review denied at 139 Wn.2d 1021 (2000).