14 P.3d 811 (2000)
103 Wash.App. 728
STATE of Washington, Respondent,
v.
George Alex HENDRICKS, Appellant.
State of Washington, Respondent,
v.
Michael W. Lowe, Appellant.
Nos. 24283-4-II, 25159-1-II.
Court of Appeals of Washington, Division 2.
December 15, 2000.
*813 Kevin R. Cole, Giffith & Cole, Pllc, Seattle, Joanne E. Dantonio, Crawford, McGilliard, Etal, Port Orchard, court appointed, for Appellants.
Randall Avery Sutton, Kitsap County Deputy Prosecuting Atty, Port Orchard, Kathleen Proctor, Pierce County Deputy Prosecuting Atty, Tacoma, for Respondents.
*812 BRIDGEWATER, J.
George Alex Hendricks and Michael W. Lowe, defendants in these linked cases, appeal their sentences claiming their adult offender scores should not have included points for their prior juvenile convictions. These juvenile convictions did not count in calculating an adult score at the time they committed *814 their juvenile offenses. But, because the legislature has clarified its intent that offender scores are to be determined by the law in effect on the day the current offense is committed, Hendricks's and Lowe's juvenile convictions must be counted regardless of our Supreme Court's holding in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999). We hold that Hendricks's score was correctly computed. And, even though Lowe was informed that the law in effect at the time of his sentencing would wash out his juvenile convictions, the wash-out provision was not a part of Lowe's plea bargain. We affirm.
The facts underlying Hendricks's and Lowe's juvenile and adult convictions are irrelevant to the issues raised in their appeals. Both appellants challenge only the calculation of their offender scores at sentencing for their adult convictions. Therefore, we summarize the facts only as they relate to sentencing.
Hendricks
On July 12, 1999, Hendricks pleaded guilty to attempted assault in the second degree. The sentencing court determined that Hendricks's offender score was "9" based on his juvenile and adult criminal history. His juvenile convictions included six convictions for non-violent offenses and one conviction for a violent offense. Hendricks committed four of these crimes before he reached the age of 15.[1] The sentencing court also counted four adult felony convictions. Hendricks objected to the use of three juvenile convictions from 1986, alleging that he had no 1986 convictions.
Lowe
On November 18, 1998, Lowe pleaded guilty to one count of taking a motor vehicle without the owner's permission,[2] one count of attempting to elude,[3] and two counts of third degree assault.[4] Lowe was 18 years old when he entered these pleas.[5] At his adult sentencing hearing, Lowe argued that four juvenile convictions could not be used in calculating his offender score for this current adult offense because of representations the State made to him when he entered the juvenile pleas. These juvenile convictions totaled four felony convictions to which Lowe pleaded guilty in 1994 (at the age of 14), and three additional juvenile felony pleas from 1997.
Each 1994 Statement of Juvenile Upon Plea of Guilty included a paragraph stating that any juvenile felony convictions would not count as part of his adult criminal history unless he committed the felony when over age 15, and he was being sentenced for a crime while between the ages of 15-23:
I have been informed, and fully understand, that my plea of guilty and the Court's acceptance of my plea, will become part of my criminal history. I have also been informed and fully understand that if the offense is a felony and I was 15 years of age or older when the offense was committed, then the plea will remain part of my criminal history when I am an adult if I commit another offense prior to my twenty-third birthday.
Clerk's Papers at 28, 35; Br. of Appellant, app. Although the sentencing court found that the SJPG constituted part of the plea agreement, it found that Lowe had no vested constitutional right based on an expectation that the sentencing laws would remain the same, and it counted Lowe's prior juvenile convictions. Lowe also had four adult felony convictions, which added four points to his current offender score. The court calculated his current adult offender score at "7."
Both Hendricks and Lowe challenged the calculations of their offender scores below.[6] We note, however, that a challenge to an offender score calculation is a sentencing error that a defendant may raise for the first time on appeal. State v. Roche, *815 75 Wash.App. 500, 513, 878 P.2d 497 (1994). We review a sentencing court's calculation of an offender score de novo. State v. McCraw, 127 Wash.2d 281, 289, 898 P.2d 838 (1995).
I. USE OF JUVENILE CONVICTIONS FOR SENTENCING UNDER THE SRA
A. Statutory Interpretation
1. History of Use of Juvenile Convictions in Calculating Offender Score
In general, when sentencing a defendant under the Sentencing Reform Act (SRA), the court must calculate the defendant's "offender score" in part based on his "criminal history" in order to determine the standard sentencing range. RCW 9.94A.030; RCW 9.94A.360. The SRA assigns a point value to prior and current offenses, and the defendant's total sum of points equals the defendant's "offender score."
Since its enactment of the SRA in 1981,[7] the legislature has amended the definition of "criminal history" multiple times, significantly affecting the use of prior juvenile convictions at sentencing. Former provisions disallowed the use of juvenile convictions in calculating an adult offender score depending on the crime committed or under specific circumstances. For example, when first enacted, the SRA provided that a defendant's "criminal history" included juvenile convictions only for RCW 13.40.020(6)(a) felonies committed when the defendant was at least 15 and the defendant was less than 23 at the time of the current offense. Former RCW 9.94A.030(8)(b) (1985). This meant that: (1) juvenile felonies "washed out" for purposes of calculating an adult offender score after the offender's 23rd birthday; and (2) juvenile felonies committed when the defendant was less than 15 years old were never included in calculating a subsequent offender score. Former RCW 9.94A.360(4) (1991). With each subsequent amendment, the legislature expanded the scope of juvenile convictions to be included in calculating a defendant's present offender score.[8] Eventually in 1997, the legislature amended RCW 9.94A.030 to include all prior juvenile adjudications in a defendant's criminal history, regardless of the offender's age at the time of either the original conviction or the current offense. Laws of 1997, ch. 338, § 2 ("1997 SRA amendment").
Consequently, when Lowe entered his juvenile pleas in 1994, his juvenile convictions automatically "washed out" under former RCW 9.94A.030 (1994) for purposes of calculating his adult offender score because he was then under the age of 15. By 1998, however, when Lowe was sentenced for his present crimes, the 1997 SRA amendment to RCW 9.94A.030 required that a sentencing court count Lowe's juvenile convictions in his present adult offender score. Similarly, four of Hendricks's juvenile convictions committed in 1986 and 1987 automatically "washed out" under the former version of the SRA because he was under 15 when he committed the crimes. Former RCW 9.94A.030(12)(b) (1991); Former RCW 9.94A.360(4) (1991). When Hendricks turned 23 in 1996, the version of the SRA then in effect "washed out" his prior juvenile convictions committed after his 15th birthday. Former RCW 9.94A.030(12)(b) (1996); Former RCW 9.94A.360(4) (1996). Under current law, a sentencing court must count all of *816 Hendricks's juvenile convictions in calculating his adult offender score because of the 1997 SRA amendment. Both appellants argue that the Supreme Court's reasoning in State v. Cruz should apply to preclude use of their prior juvenile convictions to calculate their present adult offender scores. Cruz, 139 Wash.2d 186, 985 P.2d 384.
2. State v. Cruz
In State v. Cruz, a court convicted the defendant in 1994 of first degree rape of a child. Cruz, 139 Wash.2d at 187, 985 P.2d 384. Cruz had two prior convictions, both from guilty pleas: a 1975 rape conviction and a 1989 conviction of first degree attempted burglary. Cruz, 139 Wash.2d at 188, 985 P.2d 384. Under the pre-1990 "wash out" provisions of the SRA, by the time of Cruz's 1989 conviction, the 1975 conviction had "washed out" by operation of law because Cruz did not commit any felonies within the first ten years following his release. Former RCW 9.94A.360 (1988). Cruz, 139 Wash.2d at 189, 985 P.2d 384. Thus, when being sentenced for his 1989 burglary conviction, the sentencing judge did not count the 1975 conviction as a prior offense when calculating Cruz's offender score, and the court sentenced Cruz as a first time offender. Cruz, 139 Wash.2d at 189, 985 P.2d 384.
In 1990, the legislature amended the wash-out provisions, excepting sex offenses from the wash-out provisions of the SRA. Cruz, 139 Wash.2d at 190, 985 P.2d 384 (citing Laws of 1990, ch. 3, § 706). On review, a 5-4 majority of our Supreme Court held that the 1990 amendment to the SRA would apply retroactively (and resurrect Cruz's rape conviction) if: "(1) the legislature so intended; (2) it is "curative"; or (3) it is remedial, provided, however, such retroactive application does not run afoul of any constitutional prohibition." Cruz, 139 Wash.2d at 191, 985 P.2d 384 (citing In re F.D. Processing, Inc., 119 Wash.2d 452, 460, 832 P.2d 1303 (1992)). Regarding legislative intent, the court specifically found that the legislature had not stated any intention that the 1990 changes regarding sex offenses applied retroactively. Cruz, 139 Wash.2d at 191, 985 P.2d 384. The court also found that the 1990 SRA amendment was a substantive change, and therefore was neither curative nor remedial. Cruz, 139 Wash.2d at 192, 985 P.2d 384. Consequently, because none of the enumerated factors existed, the court held that the 1990 SRA amendment applied only prospectively. Cruz, 139 Wash.2d at 193, 985 P.2d 384. Therefore, the 1990 amendment could not "revive" Cruz's 1975 offense for purposes of calculating his current adult offender score. Cruz, 139 Wash.2d at 193, 985 P.2d 384.
Here, Lowe argues that (1) the holding of Cruz applies because the legislature similarly amended the definition of "criminal history" in 1997 to include all prior juvenile convictions; and (2) just as Cruz holds that sex offenses that "washed out" by operation of law before the SRA's amendment cannot be subsequently "revived" and counted at sentencing, neither may his juvenile convictions be counted. Hendricks similarly argues that his juvenile criminal history for his offender score calculation must remain as it was before the 1997 SRA amendmentfree of all his juvenile offenses. The State counters that a 2000 Legislative amendment precludes this application of Cruz's holding to the 1997 SRA amendment regarding juvenile offenses.
3. 2000 Amendment to the SRASubstitute Senate Bill 6182
In March 2000, the 56th Washington State Legislature passed Substitute Senate Bill 6182 ("SSB 6182"), which amended chapter 9.9A RCW, effective June 8, 2000, to provide:
Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.
Laws of 2000, ch. 26, § 2. The legislature's intent in passing the amendment directly related to our Supreme Court's decision in Cruz. Section 1 of the Act states:
This act is intended to cure any ambiguity that might have led to the Washington [S]upreme [C]ourt's decision in State v. Cruz, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current *817 offense was committed. This act is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives.
Laws of 2000, ch. 26, § 1 (emphasis ours). The bill purported to clarify "the [l]egislature's intent when new sentencing provisions are enacted." S.B.Rep. & H.B.Rep. (SSB 6182) 56th Wash. Legis. Reg. Sess. (2000).
Generally, an amendment, like any other statute, only applies prospectively. F.D. Processing, Inc., 119 Wash.2d at 460, 832 P.2d 1303 (citation omitted). This presumption against retroactive application of a statute "is an essential thread in the mantle of protection that the law affords the individual citizen." Cruz, 139 Wash.2d at 190, 985 P.2d 384 (citations omitted). Nonetheless, the presumption of prospective application of a statute can be overcome if the legislature specifically provides for its retroactivity, assuming it does not contravene judicial construction of the statute. F.D. Processing, Inc., 119 Wash.2d at 461-62, 832 P.2d 1303. See also Landgraf v. USI Film Prods., 511 U.S. 244, 278, 114 S.Ct. 1522, 128 L.Ed.2d 229 (1994). Moreover, where an original enactment was ambiguous and a clarifying amendment or technical correction contravenes no judicial construction of the original statute, the amendment may be deemed curative, remedial, and applied retroactively. Cruz, 139 Wash.2d at 192, 985 P.2d 384; State v. Jones, 110 Wash.2d 74, 82, 750 P.2d 620 (1988) (citations omitted).
The 2000 amendment found in SSB 6182 is clearly not remedial. "A remedial change is one that relates to practice, procedures, or remedies, and does not effect a substantive or vested right." Cruz, 139 Wash.2d at 192, 985 P.2d 384 (citation omitted). The 2000 amendment does not alter a mere technical procedure or practice. Therefore, the relevant inquiry is whether the bill is a curative amendment. "An amendment is curative only if it clarifies or technically corrects an ambiguous statute." F.D. Processing, Inc., 119 Wash.2d at 461, 832 P.2d 1303 (citations omitted). See also Harbor Steps Ltd. P'ship v. Seattle Technical Finishing, Inc., 93 Wash.App. 792, 800, 970 P.2d 797, review denied, 138 Wash.2d 1005, 984 P.2d 1034 (1999). And the amendment must be "clearly curative" for it to be retroactively applied. F.D. Processing, Inc., 119 Wash.2d at 462, 832 P.2d 1303 (citation omitted). One "well recognized" indication of legislative intent to clarify a statute is ambiguity in the original act. Marine Power & Equip. Co. v. Washington Human Rights Comm'n Hearing Tribunal, 39 Wash.App. 609, 615, 694 P.2d 697 (1985); Harbor Steps, 93 Wash.App. at 800, 970 P.2d 797; State v. McKinley, 84 Wash.App. 677, 686, 929 P.2d 1145 (1997).
Here, the 1997 SRA amendment was silent and therefore unclear regarding its retroactive application. But SSB 6182 and its bill reports explicitly indicate the legislature's intent for retroactive application of SRA sentencing amendments. The final bill reports describe SSB 6182 as "[s]pecifying the effect that changes in law will have on sentencing provisions." S.B. Rep. & H.B. Rep. (SSB 6182) 56th Wash. Legis. Reg. Sess. (2000); (available at http://www.leg.wa.gov/ pub/billinfo/1999-00). And the act itself indicates that the legislative intent is to "cure any ambiguity[.]" Laws of 2000, ch. 26, § 1. It is abundantly clear from the legislative history of SSB 6182 that the legislature intended that the 2000 amendment clarify an ambiguity present in the earlier revisions to the SRA in order to prevent possible future judicial misinterpretations.
In short, the bill clarifies how to apply all amendments to the offender score portion of the SRA. It is both curative and expressly intended to apply retroactively. SSB 6182 explains that SRA amendments superseding earlier amendments control to determine a defendant's criminal history at the time he committed his present crime, regardless of when the defendant committed the past crimes. Laws of 2000, ch. 26 § 1. The relevant version of the SRA to be applied in imposing a sentence is the "law in effect when the current offense was committed," not the law in effect when the defendant committed the predicate crimes. Laws of 2000, ch. 26, § 1.
*818 But curative amendments will be given retroactive effect only if they do not contravene any judicial construction of the original statute. Jones, 110 Wash.2d at 82, 750 P.2d 620. In other words, clarifying statutes that overrule a judicial ruling may not be applied retroactively. To do so would "make the legislature a court of last resort." State v. Dunaway, 109 Wash.2d 207, 216 n. 6, 743 P.2d 1237, 749 P.2d 160 (1987) (citations omitted), review denied, 114 Wash.2d 1004, 788 P.2d 1078 (1990). Cruz specifically held that Laws of 1990, ch. 3, § 706, regarding sex offenses, could not be retroactively applied. Cruz, 139 Wash.2d at 191-92, 985 P.2d 384. Application of SSB 6182 to the 1990 sex offense amendment clearly contravenes this specific holding of Cruz and cannot be given retroactive effect as to Cruz-type casesi.e. those involving sex offenses that washed out prior to the 1990 SRA amendment (Laws of 1990, ch. 3, § 706).
The next relevant inquiry is whether SSB 6182 may "overrule" the reasoning of Cruz as it applies to other SRA amendments regarding criminal history. We narrowly read the holding of Cruz. The specific holding of Cruz is limited to the 1990 sex offender amendments (Laws of 1990, ch. 3, § 702). Cruz relied upon on the explicit legislative statement that the amendment only "apply to crimes committed on or after July 1, 1990." (Emphasis ours) Cruz, 139 Wash.2d at 192, 985 P.2d 384 (citing Laws of 1990, ch. 3, § 1406(2)). At most, therefore, Cruz applies to all SRA amendments with this same effective date, found in Laws of 1990, ch. 3, § 1406(2). This section did not include any of the juvenile conviction wash-outs, and there is no similar effective date language in the 1997 SRA amendment.[9] Applying the 2000 Amendment to Hendricks's and Lowe's sentences, therefore, dictates that the 1997 SRA amendment regarding juvenile felony convictions applies to the sentence calculation for their 1998 offenses. This interpretation does not contravene Cruz, because this case does not involve the 1990 amendment at issue in Cruz, i.e., sex offenses. Consequently, we hold that the 1997 juvenile offense amendments applied "retroactively" when calculating an adult offender score on the date that Hendricks and Lowe were sentenced in 1999. Therefore, the sentencing court properly counted these prior convictions when calculating their offender scores.
Moreover, Cruz did signal a significant departure from prior case law regarding the SRA sentencing "wash-out" provisions. Before Cruz, the majority of courts applied the SRA amendments to require that the sentencing court determine criminal history based upon the version of the SRA in effect at the time of sentencing. See, e.g., In re Personal Restraint of Williams, 111 Wash.2d 353, 360-61, 759 P.2d 436 (1988) (holding that SRA amendments effective after Williams' sentencing could not apply); State v. Curran, 116 Wash.2d 174, 186, 804 P.2d 558 (1991) (holding amendment to RCW 9.94A.400(1)(a) applied at time of sentence, retroactively to defendant's crimes). For example, in Watkins, Division One of this court specifically rejected the reasoning that past crimes "washed out" forever because former RCW 9.94A.360(2) (Repealed 1995) provided that Class B felonies "washed out" if the offender remained felony free for ten years. State v. Watkins, 86 Wash.App. 852, 855, 939 P.2d 1243 (1997). Watkins held that the 1995 SRA amendment, which required that the defendant remain free of any crime (not just felonies) for ten years, applied to sentencing for the current offense in that case. Watkins, 86 Wash.App. at 855, 939 P.2d 1243. The court held this in spite of the fact that the ten-year "felony free" period had lapsed under the old version of the statute. Watkins, 86 Wash.App. at 856, 939 P.2d 1243. Division Two also rejected a similar argument that once felonies were previously "washed out" under former RCW 9.94A.360(2) (1986), they could not be revived for sentencing. State v. Wood, 94 Wash.App. 636, 645, 972 P.2d 552 (1999). Division Two favorably cited Watkins to hold that the sentencing court must determine criminal history based upon the version of the SRA in effect at the time of sentencing. Wood, 94 Wash.App. at 645, 972 P.2d 552. The 2000 Amendment to the SRA, SB 6182, clarifies that this is still the correct application of all *819 amendments to the offender score portions of the SRA.
Therefore, retroactive application of the 1997 amendments relying upon SSB 6182 is not in derogation of Cruz's specific holding. Cruz's holding applies only to the 1990 sex offense amendments. In construing the statute, our goal is to give effect to the legislature's intent. State v. T.K., 139 Wash.2d 320, 329, 987 P.2d 63 (1999); State v. Elgin, 118 Wash.2d 551, 555, 825 P.2d 314 (1992). Clearly, this application of the 2000 SRA amendment best gives effect to legislative intent. And it promotes a bright-line rule for determining criminal history at sentencing. We hold that the 1997 SRA amendment was ambiguous as to its retroactive application, the SSB 6182 was a clarification, and no judicial construction is contravened by applying it to the 1997 amendment. Therefore, as an issue of statutory construction, the 1997 SRA amendment applies retroactively when calculating Hendricks's and Lowe's adult sentences.
B. Constitutional Challenges
The Cruz court did not address any constitutional challenges to retroactive application of the SRA amendments because it found that the 1990 amendment did not apply retroactively based on principles of statutory interpretation. Cruz, 139 Wash.2d at 190, 985 P.2d 384. Because we hold that the legislature specifically requires that the 1997 SRA amendment applies retroactively, we next address the constitutional challenges Hendricks and Lowe raise. In considering these constitutional challenges raised by the appellants, we begin with the presumption that the statutes at issue are constitutional. State v. Hennings, 129 Wash.2d 512, 524, 919 P.2d 580 (1996) (citations omitted). A party challenging the statute has the burden of proving it unconstitutional beyond a reasonable doubt. Hennings, 129 Wash.2d at 524, 919 P.2d 580 (citations omitted).
1. Substantive Due Process
Even a remedial or curative statute does not apply retroactively if it affects a substantive or vested right. T.K., 139 Wash.2d at 333; F.D. Food Processing, 119 Wash.2d at 461-462, 832 P.2d 1303. A challenge asserting that retroactive application of an amendment impinged upon a defendant's substantive vested right is a due process issue. A retroactive law violates due process if the retroactive application of a statute deprives an individual of a vested right. Caritas Servs., Inc. v. Department of Social & Health Servs., 123 Wash.2d 391, 413, 869 P.2d 28 (1994); Hennings, 129 Wash.2d at 529, 919 P.2d 580.
Hendricks argues that he has a vested right to the exclusion of his juvenile convictions from his adult criminal history by citing to State v. T.K. T.K. concerned a former statute that entitled a juvenile offender to seek expungement of his record two years after his discharge from state agency supervision. T.K., 139 Wash.2d at 325, 987 P.2d 63. Former RCW 13.50.050(11) (1986) required a juvenile court to grant the motion to vacate and seal the juvenile court records if the juvenile had not committed any other offenses within a proscribed period. T.K., 139 Wash.2d at 325, 987 P.2d 63. In 1997, the legislature amended the statute to eliminate sealing juvenile records if the original offense was for a sex offense or a Class A felony, and it increased the "crime free" period for certain felonies. T.K., 139 Wash.2d at 325-26, 987 P.2d 63. Our Supreme Court held that the lower courts must expunge the juvenile records upon petition, holding that each appellant's right to seek expungement under the former law had matured before the law changed when they had satisfied the statutory conditions of expungement. T.K., 139 Wash.2d at 335, 987 P.2d 63. The Supreme Court reasoned that the appellants had a vested substantive right to seek expungement because they had met the statutory requirements. T.K., 139 Wash.2d at 333-34, 987 P.2d 63.
Here, however, the appellants did not have a "vested right" to wash out of their juvenile convictions. Although one test of the constitutionality of retroactive legislation is whether the retroactive law defeats the reasonable expectations of the parties, a vested right entitled to due process protection must be more than a mere expectation based *820 upon an anticipated continuance of the existing law. Hennings, 129 Wash.2d at 528, 919 P.2d 580. See also State v. McRae, 96 Wash. App. 298, 305, 979 P.2d 911 (1999) (rejecting the argument that a defendant has a substantive right stemming from prior sentencing laws in the context of plea agreements), review denied, 139 Wash.2d 1021, 994 P.2d 849 (2000). Hendricks's and Lowe's arguments are based upon such an unreasonable expectation. Hendricks's and Lowe's anticipation that the sentencing laws would not change (i.e. that their juvenile convictions would "wash out") does not constitute a vested right. Without such a right, application of the current sentencing laws to their present offenses does not violate due process considerations.
2. Ex Post Facto
The ex post facto clause also protects against potential harm from retroactive application of newly enacted laws. U.S. Const. art. I, 10, cl. 1; Wash. Const. art. I, § 23. The ex post facto clause not only ensures that individuals have fair warning about the effect of newly enacted criminal statutes, but also "restricts governmental power by restraining arbitrary and potentially vindictive legislation." Weaver v. Graham, 450 U.S. 24, 28-29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); Landgraf, 511 U.S. at 266, 114 S.Ct. 1483; State v. Schmidt, 100 Wash.App. 297, 299, 996 P.2d 1119 (2000). Under the United States constitution, a requirement that Congress first make its intention clear helps ensure that the legislature has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness. Landgraf, 511 U.S. at 268. Both the state and federal ex post facto clauses prohibit the state from enacting any law that increases the punishment for an offense after the crime has been committed. Hennings, 129 Wash.2d at 525, 919 P.2d 580 (citations omitted).
A law violates the ex post facto prohibition if it: (1) aggravates a crime or makes it greater than it was when committed; (2) permits imposition of a different or more severe punishment than was permissible when the crime was committed; or (3) changes the legal rules to permit less or different testimony to convict the offender than was required when the crime was committed. Williams, 111 Wash.2d at 362, 759 P.2d 436 (citations omitted). Hendricks and Lowe both argue that application of the 1997 SRA amendment to their current sentences retroactively increases the penalty for their juvenile convictions because of the resulting increase in their current offender scores.
Although the majority in Cruz declined to reach the ex post facto issue, the dissent specifically rejected Cruz's ex post facto argument. The dissent reasoned that use of prior crimes to calculate a defendant's present offender score affects criminal behavior only after the effective date of the amendment. Cruz, 139 Wash.2d at 198, 985 P.2d 384 (J. Talmadge, dissenting). The dissent further maintained that because the SRA amendments did not retroactively increase the penalties for past offenses, an ex post facto violation was not present. Cruz, 139 Wash.2d at 198, 985 P.2d 384 (citing State v. Ammons, 105 Wash.2d 175, 713 P.2d 719, 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986); Williams, 111 Wash.2d at 362-63, 759 P.2d 436; State v. Manussier, 129 Wash.2d 652, 921 P.2d 473 (1996), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997)).
This reasoning follows the Supreme Court's reasoning in Williams, where our Supreme Court examined ex post facto in the context of pre-versus post-SRA convictions. Our Supreme Court held that "the SRA does not increase punishment for the defendant's prior offenses; rather, it calculates his sentence for his post-SRA conviction only." Williams, 111 Wash.2d at 363, 759 P.2d 436. See also Wood, 94 Wash.App. at 645, 972 P.2d 552 (holding no violation of ex post facto when including earlier felony convictions in offender score pursuant to sentencing provision in effect at time of present offenses); Watkins, 86 Wash.App. at 856, 939 P.2d 1243. Furthermore, the Williams court favorably cited the decision in State v. Randle, 47 Wash.App. 232, 734 P.2d 51 (1987), review denied, 110 Wash.2d 1008 (1988), which specifically held that use of pre-SRA juvenile convictions to calculate a sentence for a post-SRA *821 adult crime did not violate state and federal ex post facto provisions. Williams, 111 Wash.2d at 363, 759 P.2d 436. As our Supreme Court stated: "The Court of Appeals correctly observed that the defendant's argument rested on a flawed premise: that the use of juvenile offenses to determine or enhance sentences for subsequent adult crimes constitutes additional punishment for the prior conduct." Williams, 111 Wash.2d at 363, 759 P.2d 436 (citing Randle, 47 Wash. App. at 241, 734 P.2d 51).
Applying this reasoning here, the use of Lowe's and Hendricks's prior juvenile convictions does not violate ex post facto principles because it does not enhance the penalty for their prior juvenile convictions. Use of the juvenile convictions increases the sentence for their current criminal behavior, and then only after the 1997 effective date of the amendment. All individuals committing crimes after the effective date of the 1997 SRA amendment have notice that there are different rules determining their criminal history than existed before the 1997 SRA amendment. An individual has an opportunity to know what the current sentencing law is and adjust current behavior accordingly. We hold that application of the 1997 SRA amendment to calculation of both appellants' current offender scores does not violate the ex post facto clause.
II. MISCALCULATION OF HENDRICKS'S OFFENDER SCORE
Hendricks asserts that even if the trial court properly counted his juvenile convictions, the court still miscalculated his offender score. The trial court calculated Hendricks's offender score at "9." This was correct.
The sentencing court incorrectly determined that Hendricks's juvenile conviction for attempted first-degree theft was a violent crime. RCW 9A.56.030(2);[10] RCW 9A.28.020(3)(c).[11] It is a class C felony and therefore a nonviolent offense. RCW 9.94A.030(26) & (41). Therefore, his six non-violent juvenile convictions[12] each count as ".5," for a total of "3."
The second-degree robbery juvenile conviction counts as two full points because it is a violent offense. RCW 9.94A.030 (41)(a). It does not, as Hendricks asserts, count only as one point. The SRA provides that if the present offense is for an anticipatory offense, each prior conviction is scored as if the current offense were a completed offense. RCW 9.94A.360(4). The completed offense of second-degree assault (Hendricks's current offense) is a violent offense. RCW 9.94A.030(41)(a). Therefore, because the present offense is treated like a serious violent offense, the second-degree robbery juvenile conviction was properly counted as "2," not "1" as Hendricks asserts. RCW 9.94A.360(8). That brings the total for Hendricks's juvenile convictions to "5." Hendricks's four prior adult felonies each count as one point. Added together, that brings Hendricks's total offender score to "9." Assault in the second degree has a seriousness level of IV. RCW 9.94A.320. The standard sentence range for an offender score of "9" with a seriousness level of IV is 47.25-63.0 months for an attempted crime, as the trial court correctly determined. RCW 9.94A.310(1)-(2).[13] Therefore, the trial court correctly sentenced Hendricks to 55 months, which is within this correct standard range.
III. LOWE'S STATEMENT OF JUVENILE UPON PLEA OF GUILTY
Lowe argues that the inclusion of his juvenile convictions in calculating his offender score contravened his juvenile plea agreements because of his understanding of the law at the time of his juvenile sentences. *822 Lowe specifically maintains that, under the terms of his 1994 plea agreements, he understood that those juvenile convictions would not be part of his adult criminal history because he was under 15 years of age. He argues that this was "part and parcel" of the bargain that the State offered to him in consideration for his giving up his constitutional right to trial. Lowe asserts that language contained within each of his Statements of Juvenile on Plea of Guilty (SJPG) evidences this bargained for assurance from the State:
I have been informed, and fully understand, that my plea of guilty and the Court's acceptance of my plea, will become part of my criminal history. I have also been informed and fully understand that if the offense is a felony and I was 15 years of age or older when the offense was committed, then the plea will remain part of my criminal history when I am an adult if I commit another offense prior to my twenty-third birthday.
Clerk's Papers at 28, 35.
The State first argues that the SJPGs are not plea agreements. Generally a defendant signs a statement of defendant on plea of guilty as part of a plea agreement. See, e.g. State v. Wilson, 102 Wash.App. 161, 163, 6 P.3d 637 (2000); State v. Dennis, 45 Wash.App. 893, 898, 728 P.2d 1075 (1986), review denied, 108 Wash.2d 1007 (1987). Lowe asserted at the sentencing hearing that there was no document entitled "Plea Agreement" because "[t]hey don't particularly have plea agreements in juvenile court" and that it was the general practice in juvenile court to prepare only the SJPG, and not any separate plea agreement. Therefore, Lowe argues that the SJPG is essentially the written memorandum of the agreement and the memorialization of the State's bargain with Lowe. But Lowe provides no evidence that this was standard practice nor cites any legal authority supporting that the SJPG should be treated like a plea agreement. Lowe merely assumes the SJPGs must be treated as a terms of a plea contract.
Even assuming that the SJPG evidences the terms of the plea agreement, or is a plea agreement itself, Division One has specifically held that a defendant's juvenile convictions need not be excluded from their adult offender scores simply based on the bargains they reached in their juvenile pleas. McRae, 96 Wash.App. at 306, 979 P.2d 911. As the McRae court stated, the State fulfills its obligations under a plea agreement if it acts in good faith and does not contravene any of the defendant's reasonable expectations that arise from the agreement. McRae, 96 Wash. App. at 305, 979 P.2d 911 (citations omitted). Here, the State, in good faith, correctly informed Lowe of the sentencing law at the time of his juvenile plea.
Neither has the State contravened any reasonable expectation of Lowe. As discussed in the due process context above, Lowe is not entitled to rely solely on an expectation that the sentencing laws would not change. McRae, 96 Wash.App. at 305, 979 P.2d 911 (citing Hennings, 129 Wash.2d at 528, 919 P.2d 580). Due process may dictate that the terms of a plea agreement be enforced in spite of explicit statutes to the contrary. State v. Miller, 110 Wash.2d 528, 532, 756 P.2d 122 (1988); State v. Shineman, 94 Wash.App. 57, 60, 971 P.2d 94 (1999). But, as discussed above, an expectation that the sentencing laws would not change does not create a vested right entitling the defendant to "wash out" of prior juvenile convictions.
And the legislature's later amendment of the SRA does not mean the State violated a promise made to Lowe when he entered his juvenile pleas; the law regarding criminal history changed. Lowe has not proved that the State specifically promised in the plea agreement to exclude the four juvenile convictions for all future offenses. Lowe has not presented any evidence of the plea bargain negotiations, or even a plea agreement itself, to show that the State made an explicit promise. The language cited in the SJPG does not indicate a "bargained for" assurance the State offered in exchange for Lowe's juvenile plea. Nothing in the SJPG suggests that Lowe's decision to plead guilty was based on a bargained-for agreement. The SJPGs, by themselves, do not entitle Lowe to an exemption from the sentencing laws.
*823 Lowe did not have a vested right in the juvenile "wash-out" provisions, nor has he proven that the State had a contractual obligation to permanently wash out his juvenile convictions for purposes of calculating his present offender score. Therefore, the State's use of the pleas does not constitute a breach of any prior agreement, and the application of the current sentencing provisions does not violate due process.
Affirmed.
ARMSTRONG, C.J., and HUNT, J., concur.
NOTES
[1] Hendricks's birth date is January 11, 1973.
[2] RCW 9A.56.070(1).
[3] RCW 46.61.024.
[4] RCW 9A.36.031 (1)(a) and/or (g).
[5] Lowe's birth date is March 19, 1980.
[6] Our Supreme Court issued the Cruz opinion on October 7, 1999post-sentencing in appellants' cases. Cruz, 139 Wash.2d 186, 985 P.2d 384.
[7] The SRA was enacted in 1981, effective July 1, 1984. RCW 9.94A.905 (Laws of 1981, ch. 137, § 28).
[8] After the 1984 effective date, the four subsequent pre 1997 amendments provided:

(1) In 1986, the Legislature amended the statute so that juvenile convictions for Class A felonies committed after the age of 15 would always be included in a defendant's criminal history. Former RCW 9.94A.030(8)(b) (Laws of 1986, ch. 257, § 17) (Effective July 1, 1986).
(2) The 1988 modification included serious traffic offenses in addition to Class A felonies. Former RCW 9.94A.030(8)(b) (Laws of 1988, ch. 157, § 1) (Effective July 1, 1988).
(3) The 1990 amendment required that "criminal history shall always include juvenile sex offenses." Former RCW 9.94A.030(12)(b) (Laws of 1990, ch. 3, § 602) (Effective July 1, 1990).
(4) In 1995, the Legislature determined that serious violent juvenile convictions should always be included in addition to sex offenses. Former RCW 9.94A.030(12)(b) (Laws of 1995, ch. 101, § 2) (Effective July 23, 1995).
[9] Laws of 1997, ch. 338 simply provided a general July 1, 1997 effective date.
[10] 9A.56.030(2) provides that theft in the first degree is a class B felony.
[11] RCW 9A.28.020(3)(c) provides that an attempt to commit a crime is a Class C felony when the crime attempted is a class B felony.
[12] These are: second degree theft, attempted theft first degree, possession of a controlled substance, and three convictions of taking a motor vehicle without permission.
[13] The presumptive sentence for a crime of criminal attempt is determined by multiplying the standard grid sentence range by 75 percent. RCW 9.94A.310(2) and 9.94A.410.