30 P.3d 1245 (2001)
144 Wash.2d 665
STATE of Washington, Respondent,
v.
Rodney A. SMITH, Appellant.
State of Washington, Respondent,
v.
Devaughn C. Dorsey, Appellant.
STATE of Washington, Respondent,
v.
Michael W. Lowe, Petitioner.
State of Washington, Respondent,
v.
George A. Hendricks, Petitioner.
Nos. 70683-2, 70610-7, 70685-9.
Supreme Court of Washington, En Banc.
Argued May 24, 2001.
Decided September 6, 2001.
*1246 Nielsen, Broman & Associates, James Robert Dixon, Eric Broman, Kevin R. Cole, Kathryn Allison Russell, Washington Appellate Project, Gregory Charles Link, Seattle, Crawford, McGilliard, Joanne E. Dantonio, Port Orchard, for Appellant.
George Hendricks, Shelton, pro se.
Russell Hauge, Kipsap County Prosecutor, Randall Avery Sutton, Deputy County Prosecutor, *1247 Gerald Home, Pierce County Prosecutor, Kathleen Proctor, Deputy County Prosecutor, Norm Maleng, King County Prosecutor, Douglas Koons Young, Deputy County Prosecutor, James Morrissey Whisman, Deputy County Prosecutor, Erin Elisabeth Ehlert, Deputy County Prosecutor, for Respondent.
JOHNSON, J.
The principal issue in this consolidated case is whether the 1997 amendment to juvenile "wash-out" provisions of the Sentencing Reform Act of 1981 (SRA)[1] applies retroactively so as to revive appellants' previously "washed out" juvenile felony adjudications for purposes of calculating offender scores for their current offenses. We find the 1997 amendment is not retroactive and remand all four individual cases for resentencing. Additionally, Dorsey raises several unrelated challenges to his conviction. We find no merit in these additional challenges.

I. RETROACTIVITY

Facts
On February 18, 1999, Rodney Smith (Smith) pleaded guilty to one count of unlawful possession of cocaine. When calculating his offender score for this crime, the sentencing court included five prior juvenile felony adjudications that had washed out in 1991 when he reached age 23.
On August 19, 1999, Devaughn Dorsey (Dorsey) was convicted of attempting to elude a police officer and driving with a suspended license. When calculating his offender score, the sentencing court included four prior juvenile felony adjudications that had washed out in 1996 when he reached age 23.
On November 18, 1998, Michael Lowe (Lowe) pleaded guilty to one count of taking a motor vehicle without the owner's permission, one count of attempting to elude police, and two counts of third degree assault. When calculating his offender score, the sentencing court included four prior juvenile felony adjudications that had previously washed out because they occurred before he reached age 15.
On July 12, 1999, George Hendricks (Hendricks) pleaded guilty to attempted assault in the second degree. When calculating his offender score, the sentencing court added points for four prior juvenile adjudications that had previously washed out because they occurred before he reached age 15.
Each appellant independently appealed his sentence on the grounds the washed out convictions should not have been counted when calculating the offender score for the current offense(s). The Court of Appeals, Division One, consolidated Smith's and Dorsey's cases and transferred the appeals to this court for review of the following issue:
The principle [sic] issue in these cases concerns the proper computation of offender scores based upon subsequent legislative amendments to juvenile felony "wash-out" provisions. After the decision in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), the Washington State Legislature amended chapter 9.94A RCW, effective June 8, 2000, in response to the Cruz decision. Should that amendment be given retroactive effect in these cases?
Order Consolidating Cases and Order of Certification at 1 (Wash.Ct.App. Jan. 31, 2001). This court accepted review.
Meanwhile, the Court of Appeals, Division Two, consolidated Lowe's and Hendricks' cases and heard argument. The Court of Appeals affirmed appellants' sentences. State v. Hendricks, 103 WasLApp. 728, 14 P.3d 811 (2000). Lowe and Hendricks petitioned this court for review. We accepted review and consolidated all four cases.

Analysis
In general, when sentencing a defendant under the SRA, the court must calculate a defendant's "offender score" in part based on his or her "criminal history." RCW 9.94A.360; RCW 9.94A.030. Since the enactment of the SRA in 1981, the Legislature has amended the definition of "criminal history" several times regarding the use of prior juvenile adjudications at sentencing. Prior to 1997, "criminal history" was defined as including: *1248 a defendant's other prior convictions in juvenile court if: (i) The conviction was for an offense which is a felony or a serious traffic offense and is criminal history as defined in RCW 13.40.020(9); (ii) the defendant was fifteen years of age or older at the time the offense was committed; and (iii) with respect to prior juvenile class B or C felonies or serious traffic offenses, the defendant was less than twenty-three years of age at the time the offense for which he or she is being sentenced was committed.
Former RCW 9.94A.030(12)(b) (1996). This meant juvenile felonies washed out after an offender reached age 23, and juvenile felonies committed when a defendant was less than age 15 were not included in calculating a subsequent offender score.
In 1997, the Legislature amended former RCW 9.94A.030(12)(b) (1996) to include all prior juvenile adjudications in a defendant's criminal history. Laws of 1997, ch. 338, § 2 (1997 amendment). The appellants here argue the 1997 amendment does not apply retroactively and the previously washed out juvenile adjudications cannot be revived for purposes of calculating offender scores for their current offenses. The State counters that the 1997 amendment does apply retroactively because in 2000 the Legislature amended the SRA to make the sentencing provisions retroactive.
While we have not specifically reviewed the 1997 amendment as it pertains to the juvenile wash-out provisions, we reviewed a similar issue in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999). At issue in Cruz was whether the 1990 SRA amendments to the juvenile wash-out provision for sex offenders applied retroactively. Prior to 1990, juvenile sex offenses washed out if an offender spent 10 years in the community without another felony conviction. See former RCW 9.94A.360(4) (1988). In 1990, this provision was deleted from the statute. The effect of the 1990 amendments was significant in Cruz' case because his criminal record included a juvenile adjudication for a sex offense that had washed out prior to 1990. In 1994, when Cruz was sentenced for the new offense, the sentencing court included Cruz' prior adjudication as part of his criminal history even though it had washed out. Cruz challenged his sentence on the grounds the 1990 amendments were not retroactive and, therefore, the sentencing court could not factor in his prior adjudication when calculating his offender score. We agreed.
Using standard rules of statutory construction, we explained the 1990 amendments could apply retroactively only if: (1) the Legislature so intended; (2) the amendments were "curative"; or (3) the amendments were remedial. Cruz, 139 Wash.2d at 191, 985 P.2d 384. After determining none of these factors existed, we concluded the 1990 amendments applied prospectively only. Therefore, Cruz' previously washed out adjudication could not be factored into his offender score for the 1994 offense. Cruz, 139 Wash.2d at 193, 985 P.2d 384.
In 2000, the Legislature responded to our decision in Cruz by enacting RCW 9.94A.345. Laws of 2000, ch. 26, § 2. This statute states: "Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345. On its face, this language does not implicate Cruz. However, the Legislature also included the following statement in the statutory note:
"RCW 9.94A.345 is intended to cure any ambiguity that might have led to the Washington supreme court's decision in State v. Cruz, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender Score should be determined by the law in effect on the day the current offense was committed. RCW 9.94A.345 is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives."
RCW 9.94A.345 Intent2000 c 26. The State asks us to find in this language a clear legislative intent that the 1997 amendment applies retroactively. We cannot. Although this statement perhaps indicates a general legislative discontent with our holding in Cruz, there is nothing demonstrating an intent for the retroactive application of the 1997 amendment.
RCW 9.94A.345 does not contain an explicit legislative command that the 1997 amendment *1249 applies retroactively. As we stated in Cruz, any legislative intent that a statute applies retroactively must be in the form of an explicit legislative command. Cruz, 139 Wash.2d at 193, 985 P.2d 384. Had the Legislature intended to make the 1997 amendment retroactive, it should have stated that intention directly and unambiguously. It did not. RCW 9.94A.345 merely directs us to apply "the law in effect when the current offense was committed." The issue in Cruz, and in this case, is whether the law in effect when the current offense was committed is retroactive or prospective. RCW 9.94A.345 offers no guidance in answering this. Therefore, we look to the language of RCW 9.94A.030 alone to determine whether the 1997 amendment applies retroactively to revive appellants' previously washed out juvenile adjudications.
We begin our statutory analysis with a presumption an amendment is prospective. The presumption against retroactive application of a statute or amendment "`is an essential thread in the mantle of protection that the law affords the individual citizen.'" Cruz, 139 Wash.2d at 190, 985 P.2d 384 (quoting Lynce v. Mathis, 519 U.S. 433, 439, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997)). This presumption "`"is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."'" Cruz, 139 Wash.2d at 190, 985 P.2d 384 (quoting Lynce, 519 U.S. at 439, 117 S.Ct. 891). Although this presumption can be overcome in certain circumstances, generally courts disfavor retroactivity. In re Estate of Burns, 131 Wash.2d 104, 110, 928 P.2d 1094 (1997). The State can overcome the presumption of prospective application in this case only if it shows: (1) the Legislature intended the 1997 amendment to apply retroactively; (2) the 1997 amendment is "curative"; or (3) the 1997 amendment is remedial.[2]Cruz, 139 Wash.2d at 190-93, 985 P.2d 384; In re F.D. Processing, Inc., 119 Wash.2d 452, 460, 832 P.2d 1303 (1992). In this case, none of these factors exist.
The SRA contains no language showing the Legislature intended the 1997 amendment to apply retroactively. Legislative intent for retroactivity must be clearly found within the statute's language. Landgraf v. USI Film Prods., 511 U.S. 244, 268-69, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); State v. Douty, 92 Wash.2d 930, 935, 603 P.2d 373 (1979). The 1997 amendment changed the definition of "criminal history" to read as follows:
"Criminal history" means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere. The history shall include, where known, for each conviction (a) whether the defendant has been placed on probation and the length and terms thereof; and (b) whether the defendant has been incarcerated and the length of incarceration.
RCW 9.94A.030(12). This language fails to establish a legislative intent that the 1997 amendment applies retroactively.
The 1997 amendment also is not curative. A curative amendment clarifies or technically corrects an ambiguous statute. F.D. Processing, 119 Wash.2d at 461, 832 P.2d 1303. The 1997 amendment was not a clarification of the prior definition of "criminal history." Nor was it a technical correction. Instead, it substantively changed the meaning of "criminal history" so as to eliminate the juvenile wash-out provisions previously in place. This type of substantive change is not curative.
Further, the 1997 amendment is not remedial. A remedial change is one that relates to practice, procedures, or remedies and does not affect a substantial or vested right. Cruz, 139 Wash.2d at 192, 985 P.2d 384. In Cruz, we explained the 1990 amendments were substantive changes because they imposed an affirmative disability, they promoted a retributive aim of punishment, and there was no nonrational basis or nonpunitive *1250 purpose for the changes. Cruz, 139 Wash.2d at 192, 985 P.2d 384. Similarly, the 1997 amendment at issue here imposes an affirmative disability and promotes a retributive aim of punishment by removing the juvenile wash-out provisions from the SRA.
Because the SRA contains no explicit legislative intent for retroactivity, and the 1997 amendment is neither curative nor remedial, we hold the 1997 amendment cannot be applied retroactively. Accordingly, we find the sentencing courts erred by reviving appellants' previously washed out juvenile adjudications and calculating them into their offender scores. The Court of Appeals decision in State v. Hendricks, 103 Wash.App. 728, 14 P.3d 811 is reversed. We remand all four individual cases for resentencing.

II. DUE PROCESS AND PROSECTORIAL MISCONDUCT CLAIMS

Facts
Dorsey raises several unrelated challenges to his sentence; these issues are addressed in this section of the opinion.[3]
Officer Aaron Sausman (Sausman) of the Seattle Police Department (SPD) was in a patrol car unit in south Seattle just after midnight on May 10, 1999, when he saw a red car driven by Dorsey speed by. Sausman followed the car, paced it, and determined it was speeding. After the car turned right without signaling, Sausman turned on his emergency lights to pull the car over.
When Sausman came into the driver's view at the back of the car, Dorsey suddenly drove away. SPD detective Daniel Betse (Betse) joined Sausman and an eight-minute chase ensued. Dorsey's car finally stopped after two of its tires drove over a planting strip. Dorsey exited the car and started running. Sausman chased Dorsey on foot; Betse pursued by car. Sausman overpowered Dorsey and physically forced him to the ground; Dorsey was taken into custody.
Dorsey was charged with one count of attempting to elude a pursuing police vehicle and one count of driving with a revoked license. A trial was held in superior court on August 18-19, 1999.
In making its case against Dorsey for driving with a revoked license, the prosecutor introduced several documents: (1) an order of license revocation dated July 5, 1995 (which included a certification under penalty of perjury the document was sent to Dorsey's last known address); (2) an habitual traffic offender hearing request form; (3) an envelope addressed to Dorsey but stamped "return to sender;" and (4) a letter from Department of Licensing's (DOL) records custodian attesting to the authenticity of the documents. Dorsey's counsel objected to the introduction of these documents and the court reserved ruling. Later, when the jury was removed and the matter was discussed, Dorsey's counsel noted the envelope addressed to Dorsey, containing the revocation notice, had been returned to DOL. Counsel argued no foundation had been laid to show the revocation was sent to the proper address or to show proper notice of a hearing was given. Dorsey's counsel never asserted the notice was sent to the wrong address. The trial judge overruled the objections, instructing Dorsey's counsel that it had to make a threshold allegation that due process was violated.
After the State presented its case, Dorsey again raised the due process issue and moved for a dismissal but, again, made no colorable claim. The motion was denied. On August 19, 1999, a jury found Dorsey guilty on both counts.
On September 7, 1999, the date originally scheduled for sentencing, the parties briefly addressed the due process issue. Dorsey's counsel argued the State had not met its burden of showing due process had been complied with in the revocation of Dorsey's license. The trial judge expressed doubt the defense had made the necessary threshold allegation. Nonetheless, the court instructed the prosecutor to obtain from DOL the necessary documents showing the notice was in fact sent to an address provided by Dorsey. The matter was set over for further briefing and argument before sentencing.
At the next hearing on September 24, 1999, the prosecutor produced an address *1251 history statement showing the address on the envelope was indeed Dorsey's address of record at the time the notice was sent. It also showed Dorsey had provided the address. Defense counsel indicated she had no reason to believe the information was inaccurate. The trial court denied Dorsey's motion to dismiss.

Analysis
Due process requires that the State give an habitual traffic offender notice and the opportunity to be heard prior to revoking that person's driver's license. State v. Rogers, 127 Wash.2d 270, 275, 898 P.2d 294 (1995). A revocation that does not comply with due process is void. State v. Dolson, 138 Wash.2d 773, 777, 982 P.2d 100 (1999). The Legislature has codified constitutional due process requirements that provide in relevant part:
(1) Whenever a person's driving record, as maintained by the department, brings him or her within the definition of an habitual traffic offender, as defined in RCW 46.65.020, the department shall forthwith notify the person of the revocation in writing by certified mail at his or her address of record as maintained by the department.
RCW 46.65.065. This statute unequivocally directs DOL to send a notice of revocation to the driver's last address of record. If DOL's notice of revocation does not comply with the statutory standards, it is invalid. Dolson, 138 Wash.2d at 782-83, 982 P.2d 100.
When prosecuting a person for driving with a revoked license, the State has the burden of proving the revocation of the defendant's license complies with due process. State v. Storhoff, 133 Wash.2d 523, 527, 946 P.2d 783 (1997). However, to establish a violation of due process, the defendant must at least allege DOL failed to comply with the statute and this failure deprived the defendant of notice or the opportunity to be heard. Storhoff, 133 Wash.2d at 528, 946 P.2d 783.
In this case, Dorsey argues the State had the burden of producing evidence at trial that DOL sent a revocation notice to an address provided by Dorsey. Dorsey asserts, "[w]ithout evidence that the `address of record' to which the notice was sent was provided by Dorsey as required under the law in 1995, there is no way to prove that due process was met." Appellant's Br. (Dorsey) at 19.
RCW 46.65.065 requires that DOL send the notice of revocation to the address of record. All the State had to show in order to prove compliance with RCW 46.65.065 is that DOL mailed the revocation notice to Dorsey's "address of record." This was proved when the prosecutor properly introduced into evidence DOL's certification that the revocation notice was sent to Dorsey's address of record.
Dorsey did not allege that DOL sent the revocation notice to an address other than that of record. Dorsey's only argument was that the State had not met its burden. Dorsey needed to allege at least that DOL failed to comply with the statute by sending the notice to an address other than Dorsey's address of record. Because Dorsey's counsel did not properly articulate a due process challenge, it was not necessary to require the State to provide more evidence than it did at trial.
Nonetheless, during sentencing, the trial judge asked the prosecutor to provide additional evidence showing the address of record was indeed provided by Dorsey. While this additional evidence was unnecessary, its admittance in no way prejudiced Dorsey or had any bearing on the outcome of the case. We find Dorsey's due process rights were not violated.[4]
*1252 Dorsey also challenges his convictions on the grounds the prosecutor made improper comments during closing arguments that constituted prosecutorial misconduct. During the State's closing argument, the prosecutor commented on Dorsey's demeanor, describing him as someone who looked like he "has an attitude" and a "chip on his shoulder." Report of Proceedings (Aug. 19, 1999) at 57, 58. The prosecutor also claimed that a civil harassment case previously filed by Dorsey lacked merit, raised questions offensive to law enforcement, and should be given no weight in the criminal case. Defense counsel failed to object to these comments. Instead, defense counsel chose to argue the comments amounted to a "character assassination" and tied them to Dorsey's theory that the police were retaliating against him because he had previously filed complaints for harassment. On appeal, Dorsey argues the comments were improper, flagrant, and prejudicial. He argues no instruction could have cured the prejudicial effect.
Mere appeals to a jury's passion and prejudice are inappropriate. State v. Belgarde, 110 Wash.2d 504, 507, 755 P.2d 174 (1988). If defense counsel fails to object to comments made at trial, the issue on appeal becomes whether any curative instruction would have effectively erased the prejudice. Belgarde, 110 Wash.2d at 507, 755 P.2d 174. If the misconduct was so flagrant and ill intentioned that no curative instruction could obviate the prejudice engendered by the misconduct, then the conviction is overturned. Belgarde, 110 Wash.2d at 507, 755 P.2d 174. Some improper prosecutorial remarks can touch on a constitutional right but still be curable by a proper instruction. While it may be improper to comment on a defendant's demeanor so as to invite a jury to draw a negative inference about the defendant's character, the prejudice flowing from such comments is not necessarily incurable by instruction. State v. Klok, 99 Wash.App. 81, 85, 992 P.2d 1039 (2000).
The comments made by the prosecutor about Dorsey's demeanor were likely improper. However, if defense counsel had objected at the time, the trial judge could have cured the impropriety with an instruction for the jury to disregard the improper comments and decide the case based on the evidence and not on the defendant's character. Instead of objecting and asking for a cure, defense counsel appears to have made the tactical decision to use the improper comments to support Dorsey's theory of systematic retaliation and harassment by law enforcement officials.
We find the improper comments made by the prosecutor were not so flagrant they could not have been cured by an instruction. Dorsey's convictions are affirmed.
ALEXANDER, C.J., and SMITH, SANDERS, CHAMBERS, and OWENS, JJ., concur.
MADSEN, J. (dissenting).
Following this court's decision in State v. Cruz, 139 Wash.2d 186, 985 P.2d 384 (1999), the Legislature amended RCW 9.94A.030 and RCW 9.94A.360 and enacted RCW 9.94A.345. Despite the majority's surprising conclusion that the Legislature has done no more than indicate a "general legislative discontent" with the holding in Cruz, majority at 1248, the Legislature has in fact made it abundantly clear that it intends that the 1997 version of RCW 9.94A.030, and its definition of "criminal history," and the 1997 version of 9.94A.360, and its calculations for offender scores, apply when sentencing a defendant for any offense committed when the 1997 statute was in effect. In complete disregard of express legislative intent, the majority nonetheless operates on the mistaken premise that there is a remaining question as to which versions of RCW 9.94A.030 and .360 apply, those which existed when the juvenile offenses occurred, or those which exist when the offense is committed.
It is, of course, the court's province and duty to declare what the law is. Overton v. State Econ. Assistance Autk, 96 Wash.2d 552, 637 P.2d 652 (1981). However, it is equally true, when there has been no prior judicial construction of a statute, that "[c]ourts are not at liberty to speculate on legislative intent when the legislature itself has subsequently placed its own construction on prior enactments." Anderson v. City of Seattle, 78 Wash.2d 201, 203, 471 P.2d 87 (1970); see also Carpenter v. Butler, 32 *1253 Wash.2d 371, 377, 201 P.2d 704 (1949). I cannot join the majority's disregard of express legislative intent and its encroachment on legislative powers.
In Cruz, the court construed the 1990 version of RCW 9.94A.360. Although it is true that once a statute has been judicially construed the Legislature may not subsequently contravene that construction, see, e.g., In re F.D. Processing, Inc., 119 Wash.2d 452, 461-62, 832 P.2d 1303 (1992), the 1997 version of RCW 9.94A.360 is not the version of the statute which was construed in Cruz. Therefore, the Legislature was free to declare the meaning of the subsequently amended statute without regard to this court's prior construction in Cruz. It did so when it enacted RCW 9.94A.345.
RCW 9.94A.345 states that "[a]ny sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." The Legislature expressly declared its intent, stating that
"[RCW 9.94A.345] is intended to cure any ambiguity that might have led to the Washington supreme court's decision in State v. Cruz, Cause No. 67147-8 (October 7, 1999). A decision as to whether a prior conviction shall be included in an individual's offender score should be determined by the law in effect on the day the current offense was committed. [RCW 9.94A.345] is also intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives."
Laws of 2000, ch. 26, § 1.
RCW 9.94A.345 is a clear statement that the Legislature intends that the applicable law is the "law in effect on the day the current offense was committed." This plainly means the versions of RCW 9.94A.030 and RCW 9.94A.360 which were in effect when the defendants in the cases now before this court committed their current offenses, i.e., the 1997 versions of the statutes in existence on the days when the current offenses were committed. See In re Personal Restraint of Williams, 111 Wash.2d 353, 356-62, 759 P.2d 436 (1988) (applying "wash-out" statute then "in effect" in calculating offender score, i.e., calculating the offender score in a straightforward manner in accord with the directions in the version of RCW 9.94A.360 in effect at the time the defendant committed his offense). The 1997 version of RCW 9.94A.360 "in effect" when the offenses in these cases were committed set forth the manner in which the offender score was to be calculated, Laws of 1997, ch. 338, § 5, and the 1997 version of RCW 9.94A.030 provided that all prior juvenile offenses were to be included in a defendant's criminal history, Laws of 1997, ch. 338, § 5(2).[1]
The Legislature's clarification of its intent eliminates any need to question whether the 1997 versions of RCW 9.94A.030 and RCW 9.94A.360 are to be applied "retroactively." Quite simply, as the Legislature has made clear, the 1997 statutes apply to offenses committed when those statutes were in effect. This is a matter of a straightforward application of the definitions of "criminal history" and the directions for calculating offender scores found in the 1997 statutes. The law in effect when the prior offenses were committed is irrelevant.
The only retroactivity question in this case is whether the 2000 legislative clarification itself, RCW 9.94A.345, may be applied to resolve the meaning of the 1997 amendments. As explained, there has been no judicial construction of the 1997 statutes restricting the Legislature's ability to say what it intended by those statutes. The Legislature's clarification should therefore be applied retroactively and given effect. See McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs., 142 Wash.2d 316, 325-26, 12 P.3d 144 (2000); Anderson, 78 Wash.2d at 203, 471 P.2d 87; Carpenter, 32 Wash.2d at 377, 201 P.2d 704. As the Court of Appeals reasoned in State v. Hendricks, 103 Wash.App. 728, 739, 14 P.3d 811 (2000), "[SSB 6182 RCW 9.94A.245] clarifies how to apply all amendments to the offender score portion of the SRA. It is both curative and expressly intended to apply retroactively."
*1254 Because, unlike the majority, I would hold that the 1997 versions of RCW 9.94A.030 and .360 apply to convictions for offenses committed when these statutes were in effect, I touch on the remaining arguments offered by the defendants.
The argument is advanced that ex post facto prohibitions preclude use of the 1997 statutes in effect when the current offenses were committed because using the 1997 version of RCW 9.94A.360 for calculating an offender score alters the effect of the "wash-out" provisions in the prior versions of RCW 9.94A.360 existing when the defendants committed the juvenile offenses. That is, if offenses which "washed out" under prior law are now used to calculate offender scores for sentencing for the current offense, the argument goes, ex post facto violations occur because punishment is increased due to resulting higher offender scores.
This court has already determined that no ex post facto violation occurs under such circumstances. In Williams, 111 Wash.2d 353, 759 P.2d 436, the court was faced with the argument that use of the defendant's pre-SRA convictions to determine his offender score under the SRA violated the ex post facto clauses of the state and federal constitutions. Applying the analysis in State v. Randle, 47 Wash.App. 232, 734 P.2d 51 (1987), the Williams court concluded that the SRA does not increase punishment for the defendant's prior offenses, but instead provides for calculation of the sentence for the post-SRA conviction only. Williams, 111 Wash.2d at 363, 759 P.2d 436. Therefore, no ex post facto violation occurred.
The court's reliance on Randle is telling. In Randle, the defendant argued that use of pre-SRA juvenile convictions to calculate an offender score for a post-SRA adult offense violated ex post facto prohibitions. Randle, 47 Wash.App. at 240, 734 P.2d 51. The argument, however, rested on a flawed premise"that the use of juvenile offenses to determine or enhance sentences for subsequent adult crimes constitutes additional punishment for the prior conduct." Williams, 111 Wash.2d at 363, 759 P.2d 436 (discussing Randle, 47 WashApp. at 241, 734 P.2d 51). Rejecting defendant's argument, the court held that the usejof the juvenile offenses in calculating the offender score did not change the legal consequences or the underlying nature of the prior juvenile offenses, and the defendant was sentenced only for his post-SRA adult conduct. No ex post facto violation occurred. Randle, 47 Wash.App. at 243, 734 P.2d 51; Williams, 111 Wash.2d at 363, 759 P.2d 436. The same analysis applies here.
Next, the argument is made that applying the 1997 statutes violates due process because such application would retroactively affect a vested right, i.e., the "right" to "wash out" of juvenile offenses according to the terms of prior versions of the sentencing statutes. Once the "conditions" for meeting "wash-out" provisions of prior statutes are "satisfied," the argument goes, a statutory right to "wash out" of juvenile convictions arises, and subsequent amendments cannot deprive the defendant of that right.
The difficulty with the argument is that no vested right arose under the prior sentencing statutes. Generally, an individual has no vested right in continuation of existing laws. See State v. Shultz, 138 Wash.2d 638, 646, 980 P.2d 1265 (1999) (citing State v. Hennings, 129 Wash.2d 512, 528, 919 P.2d 580 (1996)) (a legal right is not vested by a mere expectation based on an anticipated continuation of existing law). An offender has no reasonable expectation, much less a vested right, in continuation of sentencing laws in effect when a juvenile offense is committed or application of those laws to future offenses and future sentences.
State v. T.K, 139 Wash.2d 320, 987 P.2d 63 (1999) is not to the contrary. First, the 1997 amendments concerning sealing of records which were at issue in T.K. were unclear as to whether they applied to requests to seal records made after the July 1, 1997, effective date. T.K, 139 Wash.2d at 329, 987 P.2d 63. Here, the Legislature has made it very clear that the SRA's 1997 amendments apply to determine sentences for offenses committed when the amendments were in effect. Second, the triggering event in T.K. was completing conditions of the sealing statute, which the defendant had completed prior to the effective date of the new amendments. Here, the calculations for determining an offender score cannot be applied until a *1255 new offense occurs, and thus those provisions are not triggered until a new offense is committed.
Nor is there any merit to the argument that due process is violated by including prior juvenile offenses in calculating offender scores for current offenses because "plea agreements" entered into at the time that the juvenile offenses were committed were entered into in part in reliance on then existing "wash-out" provisions. Initially, the Court of Appeals in Hendricks questioned whether statements of juveniles on plea of guilty are truly plea agreements. Hendricks, 103 Wash.App. at 748, 14 P.3d 811. Assuming they are plea agreements, I agree with the Court of Appeals decision in State v. McRae, 96 Wash.App. 298, 979 P.2d 911 (1999), review denied 139 Wash.2d 1021, 994 P.2d 849 (2000). There, the Court of Appeals rejected the argument that a defendant has a substantive right stemming from prior sentencing laws referenced in a plea agreement. The court reasoned that a plea agreement does not entitle a defendant to any exemption from the sentencing laws, where the agreement accurately informs the offender of the current law respecting sentencing. The court also noted that the State's obligation is to act in good faith and not contravene any reasonable expectations of the defendant that arise from the agreement. McRae, 96 Wash. App. at 305, 979 P.2d 911. The court said that a defendant does not have any reasonable expectation that the sentencing laws will not change. Id.

Conclusion
When this court decided Cruz, it did not have the benefit of the Legislature's expression of how it intended the 1990 version of RCW 9.94A.360 to be applied. The Legislature has since amended that statute and RCW 9.94A.030, and in 2000 it enacted RCW 9.94A.345 to clarify how it intends offender scores to be calculated under the sentencing statutes. It is now clear that the versions of the statutes in effect when a defendant commits an offense apply, and criminal history and offender scores are to be determined in a straightforward manner as directed by the statutes in effect at the time the offense is committed and not in accord with statutes in effect when the prior juvenile offenses were committed. Here, the 1997 versions of the statutes were in effect when the defendants in these cases committed their offenses. Accordingly, the defendants' criminal histories and offender scores should be determined in accord with the 1997 statutes' definitions and directions. It follows that prior wash-out statutes, which were no longer in effect when these defendants' current offenses were committed, have no bearing on calculation of the defendants' offender scores.
I would affirm the Court of Appeals decision in Hendricks's and Lowe's cases, and would affirm the trial court decisions in Smith's and Dorsey's cases.
BROWN, J.P.T., and IRELAND, J., concur.
NOTES
[1] Chapter 9.94A RCW.
[2] The State asserts the 1997 amendment is "retrospective" rather than "retroactive" and, therefore, requires a different kind of statutory analysis than we applied in Cruz. We do not find this argument compelling. It is well established that in judicial usage these terms are synonymous and can be used interchangeably. Landgraf v. USI Film Prods., 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); see State v. T.K., 139 Wash.2d 320, 331, 333, 987 P.2d 63 (1999); see also 2 Norman J. Singer, Statutes and Statutory Construction § 41.1, at 373-74 (6th ed. rev. 2001).
[3] Because we transferred Dorsey's entire case, we address all of Dorsey's claims even though they are unrelated to the principal issue in this case.
[4] Dorsey makes additional claims stemming from his due process claim. None have merit. First, he claims the taking in of additional evidence at the sentencing hearing constituted double jeopardy. Aside from the obvious problem this was a sentencing hearing and not a second prosecution after an acquittal, the evidence submitted at post-trial hearings had no bearing on the guilty verdicts rendered by the jury. Second, Dorsey claims the additional evidence bolstered the State's case. However, the State's case was already made without the additional evidence. Third, Dorsey claims he received ineffective assistance of counsel because his trial counsel failed to object to the admission of the additional evidence. Trial counsel's performance was reasonable. Counsel objected to the evidence as vigorously as possible given the fact the notice was sent to the address of recordan address provided by Dorsey.
[1] Certain adult and juvenile convictions could "wash out" under the 1997 statutes upon the passage of time if no further offenses were committed. See Laws of 1997, ch. 338, § 5(2). However, juvenile convictions were not treated differently than adult convictions with regard to inclusion as part of criminal history.