FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9:51

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

STATE OF WASHINGTON,

Respondent,

v.

ROBERT BARRY,

Appellant.

No. 43438-5-II

PART PUBLISHED OPINION

MAXA, J. – Robert Barry appeals his conviction of first degree child molestation (domestic violence), claiming that the trial court erred in admitting child hearsay statements and erred in instructing the jury that it could consider Barry's courtroom demeanor as evidence. In the published portion of this opinion, we hold that the trial court's instruction regarding consideration of Barry's demeanor was erroneous, but Barry cannot show prejudice from the trial court's instruction. In the unpublished portion, we hold that the record supports the trial court's child hearsay findings. Accordingly, we affirm.

## FACTS

The State charged Barry with first degree child molestation (domestic violence) committed against CC, his grandson. The case proceeded to trial. During its deliberations, the jury sent a note asking the court, "Can we use as 'evidence', for deliberation, our observations of the defendant's – actions – demeanor during the court case[?]" Clerk's Papers (CP) at 115. The

No. 43438-5-II

trial court instructed the jury, "Evidence includes what you witness in the courtroom." CP at 115. Barry objected to this instruction.

The jury found Barry guilty as charged. Barry appeals.

ANALYSIS

Barry argues that the trial court erred in instructing the jury that "[e]vidence includes what you witness in the courtroom," in response to the jury's question about whether during deliberations it could use as evidence Barry's actions and demeanor during the case. CP at 115. He asserts that allowing the jury to consider his demeanor violated both his Fifth Amendment[1] privilege against self-incrimination and his Sixth Amendment[2] right to a verdict based solely on the evidence.

We disagree that the trial court's instruction violated the Fifth Amendment. And although we agree that the trial court's instruction misstated the law, we do not find a constitutional error. We hold that the absence of any record regarding the nature of Barry's demeanor precludes him from showing that the improper instruction prejudiced him.

A.    RIGHT TO NOT TESTIFY

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Article I, section 9 of the Washington State Constitution also states that "[n]o person shall be compelled in any criminal case to give evidence against himself." Under both provisions,[3] a defendant has a right to not

---

[1] U.S. CONST. amend. V.

[2] U.S. CONST. amend. VI.

[3] Our Supreme Court has held that the scope of these provisions is the same. *E.g.*, *State v. Unga*, 165 Wn.2d 95, 100, 196 P.3d 645 (2008).

2

testify at trial. RCW 10.52.040; *State v. Epefanio*, 156 Wn. App. 378, 388, 234 P.3d 253 (2010). Barry apparently argues that by equating his demeanor with evidence, the trial court violated this right. We disagree.

Under the plain language of the constitutional provisions, the violation of the right against self-incrimination must involve some form of government compulsion. *State v. Foster*, 91 Wn.2d 466, 473, 589 P.2d 789 (1979). Here, neither the State nor the trial court forced Barry to do anything with regard to his demeanor. He had full control over how he acted in the courtroom. Other than citing the Fifth Amendment, Barry does not explain how he was *compelled* to give evidence against himself. We hold that allowing the jury to consider the defendant's demeanor as evidence does not violate the Fifth Amendment or article I, section 9.

B.      DEFENDANT'S DEMEANOR AS EVIDENCE

Barry argues that the trial court's instruction violated his Sixth Amendment right to a verdict based solely on the evidence. Implicit in this argument is that a defendant's demeanor at trial is not evidence and therefore that the instruction misstated the law. We review claimed errors in instructions de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). We agree that Barry's demeanor at trial was not "evidence" and therefore that the instruction was improper. But we hold that Barry cannot establish prejudice.

Initially, we note that the trial court's instruction was improper in its overbreadth. The State cites no authority for the proposition that anything a jury witnesses in the courtroom constitutes evidence. And many things a jury might witness in the courtroom would not constitute "evidence." For example, our Supreme Court has held that trial spectators may be allowed to display buttons showing a photograph of the victim. *State v. Lord*, 161 W.2d 276,

284, 165 P.3d 1251 (2007). Such buttons obviously would not constitute "evidence" the jury could consider in determining the defendant's guilt.

Barry limits his argument to the jury's observations of his demeanor as evidence and not some other courtroom observations. Accordingly, we limit our analysis to that issue and conclude that a defendant's demeanor was not evidence in this case.

1.    Court's Introductory Jury Instruction

The trial court instructions to the jury included an introductory instruction (instruction number 1) modeled after 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02, at 13 (3d ed. 2008) that addressed consideration of a witness's demeanor. The instruction permitted the jury to consider "the manner of the witness while testifying" when evaluating the witness's credibility. CP at 120. However, as Barry points out, here he exercised his constitutional right to not testify, and neither his credibility as a witness nor his character was at issue. Accordingly, the jury could not have considered Barry's demeanor in evaluating his credibility as a witness. Further, even if a witness's credibility is at issue, nothing in the instruction states that a witness's manner in testifying constitutes "evidence." The witness's demeanor is just a factor for the jury to consider – along with several other factors – in assessing credibility.

Moreover, instruction number 1 establishes that the jury *cannot* consider the defendant's demeanor as evidence. The instruction expressly states that the evidence the jury may consider is the testimony of witnesses and the admitted exhibits. The defendant's demeanor does not fall into either category, and the instruction does not allow for the consideration of anything else as evidence. Because neither party objected to instruction number 1, it represents the law of this case. *See State v. Hickman,* 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998).

4

2. Washington Case Law

Although they are not directly on point, two Washington cases support our conclusion that a defendant's demeanor is not evidence. Both held that it is improper for a prosecutor to *comment* on the defendant's demeanor in closing argument. In *State v. Klok*, the prosecutor commented that the defendant had been laughing during the trial. 99 Wn. App. 81, 82, 992 P.2d 1039 (2000). Division One of this court stated that "it is improper to comment on a defendant's demeanor and to invite the jury to draw from it a negative inference about the defendant's character." *Klok*, 99 Wn. App at 85.

In *State v. Smith*, the prosecutor commented on the defendant's demeanor, describing him as someone who looked like he had an attitude and a chip on his shoulder. 144 Wn.2d 665, 679, 30 P.3d 2994 (2001), *superseded by statute on other grounds*, LAWS OF 2002, ch. 107, § 1. The court cited *Klok* in stating that "it may be improper to comment on a defendant's demeanor so as to invite a jury to draw a negative inference about the defendant's character." *Smith*, 144 Wn.2d at 679. The court also concluded that the prosecutor's comments about the defendant's demeanor "were likely improper." *Smith*, 144 Wn.2d at 679.

Neither of these cases controls because they both involve prosecutor comments on a defendant's demeanor, not whether a defendant's demeanor constitutes evidence. Here, the prosecutor did not comment on Barry's courtroom behavior and therefore did not encourage the jury to use character evidence in support of a guilty verdict as in *Klok* and *Smith*. However, *Klok* and *Smith* are inconsistent with a holding that a defendant's demeanor constitutes evidence. If a

defendant's demeanor constituted evidence that a jury could consider, a prosecutor's comment about such evidence in closing argument would not be improper.[4]

We hold that here the trial court erred in instructing the jury that "[e]vidence includes what you witness in the courtroom." CP at 115. This instruction improperly allowed the jury to consider Barry's courtroom demeanor as evidence they could consider in determining his guilt.

C. PREJUDICE

Barry argues that because the trial court's instructional error implicated his Sixth Amendment right to have the jury consider only the evidence properly before it, we must apply a constitutional error analysis and determine whether the instruction was harmless beyond a reasonable doubt. *State v. Maupin*, 128 Wn.2d 918, 928-29, 913 P.2d 808 (1996). We disagree, and hold that the nonconstitutional prejudice standard applies.

Even though the trial court gave an instruction to the jury, it essentially made an evidentiary decision – allowing the jury to consider Barry's demeanor as evidence. An error in admitting evidence generally is not reviewed under the more stringent constitutional standard for prejudice. *See, e.g., State v. Gresham*, 173 Wn.2d 405, 432-33, 269 P.3d 207 (2012)(admission of evidence violated ER 404(b)); *State v. Hardy*, 133 Wn.2d 701, 712, 946 P.2d 1175 (1997) (admission of evidence violated ER 609(a)(1)); *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Instead, the test for admission of evidence is whether the defendant has

---

[4] Both Barry and the State cite multiple cases from other jurisdictions. *Compare United States v. Carroll*, 678 F.2d 1208, 1209-10 (4th Cir. 1982) ("non-testimonial behavior in the courtroom could not be taken as evidence of his guilt") *with State v. Brown*, 320 N.C. 179, 199, 358 S.E.2d 1, 15-16 (1987) (evidence is not only what they hear on the stand but what they witness in the courtroom). The cases from other jurisdictions are not particularly helpful. Most of these cases are distinguishable because like *Klok* and *Smith* they involve a prosecutor's comments on a defendant's demeanor. And there are cases on both sides of the issue of whether a defendant's demeanor constitutes evidence.

shown that the trial outcome would have been materially affected absent the error. *Gresham*, 173 Wn.2d at 433.

Applying the nonconstitutional error standard, we hold that the error was not prejudicial for two reasons. First, the record contains no reference to any behavior, comments, or other demeanor by Barry during trial.[5] As a result, we do not know what demeanor "evidence" the jury may have considered or whether his demeanor could have affected the verdict. Consequently, it is impossible to conclude that the improper jury instruction prejudiced Barry.

Second, without any information identifying what demeanor the jury may have considered, it is impossible to know whether that consideration was favorable or unfavorable to Barry. In the abstract, a defendant's demeanor is neutral. Depending on the demeanor, a jury could draw a negative inference or a positive inference from how the defendant acts during trial. As a result, merely stating that a jury may have considered a defendant's demeanor without any information about that demeanor cannot establish prejudice because that consideration may have favored the defendant.

We hold that the absence in the record of any description of Barry's demeanor precludes him from establishing that the trial court's instruction that allowed the jury to consider that demeanor prejudiced him. Accordingly, although we hold that the instruction was improper, the absence of prejudice precludes reversal on this basis.

We consider Barry's remaining arguments in the unpublished portion of this opinion. We affirm his conviction.

---

[5] Barry points out that the trial court directed Barry and trial observers to sit stoically through trial. But nothing in the record indicates whether Barry followed that direction.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

CC was born in August 2002. His parents RC and GB divorced in 2010. The divorce was very contentious. CC was aware of a conflict between RC and Robert Barry, GB's father, and he witnessed a dispute between the two men that resulted in both men obtaining mutual restraining orders.

In February 2011, RC and his wife LL learned that CC had inappropriate sexual contact with CC's cousin. CC was eight years old at the time. RC questioned CC, and CC admitted that the behavior had happened and said that TT had taught it to him. TT was CC's friend, whom CC had not seen for nearly two years as he had moved away. CC later revealed that he had initiated the sexual contact with TT.

RC and LL took CC to see Jennifer Fisher, a mental health therapist. Fisher believed that CC had learned about sexual behavior from an adult, not TT. One evening before a therapy session, RC and LL sat with CC, reassured him that it was safe to talk to them, and encouraged him to be truthful with his therapist. CC responded, " 'It's there, but it's deep. It's there. It's deep.' " Report of Proceedings (RP) at 137. He mentioned Dennis, one of his mother's ex-boyfriends. However, CC quickly said it was not Dennis after RC talked to him about the seriousness of making such an accusation. RC then left the room while LL remained with CC. When RC returned, LL told CC to repeat what he had just told her. CC mouthed the words, "It's my papa," which was his name for Barry. RP at 138.

8

Fisher referred CC to Thomas Sherry, a therapist who specialized in working with children with inappropriate sexual acting out. CC disclosed to Sherry that he had had sexual contact with four people, one of whom was Barry. Sherry later testified that in his opinion, CC's disclosures were of real events in his life. CC repeated his allegations about Barry to Sasha Mangahas, a child forensic interviewer with the Kitsap County Prosecutor's Office Special Assault Unit.

The State charged Barry with first degree child molestation (domestic violence) committed against CC. Later, CC's younger brother disclosed that Barry also had molested him. By amended information, the State charged Barry with a second count of first degree child molestation (domestic violence) committed against CC's brother.

The trial court held a preliminary hearing to determine whether the boys' statements to their parents, therapists, and the forensic interviewer were admissible as child hearsay statements. It found that both boys' statements were reliable and therefore admissible as child hearsay, and entered detailed findings. Those statements were admitted at trial.

The jury found Barry guilty of count I (CC) and found that the special domestic violence allegation was proven. It could not reach a verdict on count II (CC's brother). Barry appeals.

ANALYSIS

Barry contends that the trial court erred in finding that CC's statements to his parents, therapists, and the forensic interviewer were admissible as child hearsay statements. We disagree, and hold that the trial court properly exercised its discretion in admitting this evidence.

We review for abuse of discretion a trial court's decision to admit child hearsay statements. *State v. Kennealy*, 151 Wn. App. 861, 879, 214 P.3d 200 (2009). A trial court

abuses its discretion when its ruling is manifestly unreasonable or is based on untenable grounds or reasons. *Kennealy*, 151 Wn. App. at 879.

RCW 9A.44.120, the child hearsay exception, provides:

> A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
> (1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
> (2) The child either:
>     (a) Testifies at the proceedings; or
>     (b) Is unavailable as a witness: *Provided*, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

Because CC was under the age of 10 and testified at trial, the only question here is whether his statements had sufficient indicia of reliability under RCW 9A.44.120(1).

In determining whether a child's statements are reliable, the trial court must consider the nine reliability factors first set out in *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984): (1) whether there is an apparent motive to lie, (2) the declarant's general character, (3) whether more than one person heard the statement, (4) the spontaneity of the statements, (5) the timing of the statements and the relationship between the declarant and the witness, (6) whether the statements contained express assertions about past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested that the declarant misrepresented the defendant's involvement. *See Kennealy*, 151

Wn. App. at 880. The reliability assessment is based on an evaluation of all the factors, and no single factor is determinative. *Kennealy*, 151 Wn. App. at 881. But the factors must be substantially met to establish reliability. *Kennealy*, 151 Wn. App. at 881.

Barry argues that factors (1), (2), and (4) show that CC's hearsay statements were unreliable. But we conclude that consideration of these and the remaining factors supported the trial court's finding of reliability.

### 1. Motive To Lie

Barry contends that CC had a motive to lie because his parents had been in a contentious divorce and he knew there was animosity between CC's father and Barry, and CC wanted to please his father. The trial court found:

> Neither BC nor CC has an apparent motive to lie. There is evidence that the parents of BC and CC do not get along and their relationship can be described as acrimonious. The counselors of BC and CC have indicated that the discord between the parents of BC and CC understandably causes them stress. While one could argue an inference that somehow the inability of the adults to get along could be a cause for these allegations, there is no evidence that this is the case. A connection (based on the evidence and not a mere inference) has not been made regarding the marriage dissolution discord and the allegations of the boys regarding their grandfather.

CP at 145. The record supports this finding. While there was testimony that CC wanted both parents' approval, there was no evidence that he would gain anything by accusing Barry. The trial court correctly observed that absent such evidence, this factor weighs in favor of reliability.

### 2. General Character of Declarant

Barry contends that the trial court erred in finding that the general character factor was neutral when there was evidence that CC "demonstrated a willingness to lie about this situation" by repeatedly changing his story with regard to the sexual contact. Br. of Appellant at 12. The

trial court found that "[t]he general character of BC and CC is neutral in this case. There is no evidence regarding the two boys and any reputation for lying." CP at 145.

When assessing a child's character, we consider whether the child has a "reputation for truthfulness." *Kennealy*, 151 Wn. App. at 881. While there was evidence that CC lied about who taught him this sexual behavior, we consider CC's statements in context. While there was undisputed evidence that he lied, CC testified that he was scared to tell the truth because Barry had threatened to separate him from his family if he ever said anything about the sexual contact. Because CC's false statements can be explained by Barry's threats, in our view this evidence does not show that CC had a reputation for not telling the truth. Further, no evidence was presented in the child hearsay hearing regarding CC's general "reputation" regarding truthfulness. We agree that this factor is neutral.

3. Statements Heard By More Than One Person

CC repeated his statements to his father, two therapists, and a sexual assault unit child interviewer. The trial court did not make a written finding but did reference this factor in its oral decision. This factor weighs in favor of reliability.

4. Spontaneity of Statements

The trial court found that CC's statements were not spontaneous as they were the product of inquiry. Barry points out that this factor weighs in favor of exclusion. Br. of Appellant at 13. e agree. However, this is the only factor that supports exclusion of the statements.

5. Timing and Relationship between Declarant and Witness

The trial court found based on the counselors' testimony that the intervention of counseling between the event and CC's reporting of it did not affect the statement. Barry does not contest this finding. We further note that CC made his statements to family members and

therapists in a clinical setting, further supporting the trial court's finding. *Kennealy*, 151 Wn. App. at 884.

### 6. Express Assertions about Past Fact

The trial court found that CC made express assertions of past facts. Barry does not contest this finding.

### 7. Availability of Cross-Examination

The trial court found that through cross-examination, the defense would have the ability to establish any lack of knowledge by CC Barry does not contest this finding. Further, our Supreme Court has held that this factor does not apply when the child testifies. *State v. Woods*, 154 Wn.2d 613, 624, 114 P.3d 1174 (2005).

### 8. Possibility of Faulty Recollection

The trial court found that "CC acknowledged both in court and out-of-court that there was sexual contact between himself and the defendant." CP at 146. In its oral decision, the trial court stated that "I have no concerns about [CC's] ability to recall." RP at 406. Barry does not contest this finding. This factor weighs in favor of reliability.

### 9. Circumstances Conducive to Reliability

The trial court did not make a finding on this factor and Barry does not address it on appeal.

In summary, the trial court properly considered the *Ryan* reliability factors. This consideration demonstrated that the factors were substantially met and therefore that CC's hearsay statements had sufficient indicia of reliability under RCW 9A.44.120(1). We hold that

No. 43438-5-II

the trial court did not abuse its discretion in admitting CC's hearsay statements. Accordingly, we affirm Barry's conviction.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJØRGEN, J.

14